**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charlotte D. LEASTER, Defendant–Appellant.**

**No. 00–6501.**

United States Court of Appeals, Sixth Circuit.

May 28, 2002.

Before BATCHELDER, CLAY, Circuit Judges; and CARR, District Judge.*

CLAY, Circuit Judge.

Defendant Charlotte Leaster challenges her conviction, after a plea of guilty for possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Defendant argues that her conviction violates the Fourth Amendment to the United States Constitution inasmuch as the information contained in the affidavit accompanying the application for the warrant to search her residence had grown stale by the time the warrant issued, and the search was executed. Defendant moved to suppress the evidence below, and the district court denied her motion. For the reasons that follow, we AFFIRM.

## BACKGROUND

On October 16, 1997, Officer Randy Dunn, an officer with the Narcotics Division of the Chattanooga Police Division, applied for and executed a search warrant at Defendant's residence. The sworn affi-

---

* The Honorable James G. Carr, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

davit accompanying the search warrant application states:

I, Randy Dunn, hereby apply for a search warrant and make oath as follows:

1. I am a sworn Chattanooga Police Officer with the Narcotics Division, where I have been assigned to the Narcotics Division since 1989, and I'm a commissioned Special Deputy Sheriff for Hamilton County, Tennessee.

2. That on the 14th day of October 1997, I received reliable information from an informant, that I have known for the last four years.

3. The said informant has proven to be reliable after the information said informant provided was independently corroborated by the affiant.

4. The said informant has provided information in the past that has lead [sic] to the arrest and conviction of individuals in violation of narcotic laws.

5. The said informant has provided information to other law enforcement officers in the past that has proven to be true and correct when independently corroborated by those other law enforcement officers.

6. That said informant advised me that within the last 72 hours said informant was on the premises of said Jane Doe (alias), who resides in or occupies and is in possession of the following described premises, to wit; 1307 Cypress Street Courts, Chattanooga, Hamilton County, Tennessee. While there said informant saw legend and/or narcotic drugs including cocaine, the same being on said premises in the possession of and control of said Jane Doe (alias).

WHEREFORE as such officers acting in performance of my duty in the premises I pray that the Court issue a warrant authorizing the search of the said Jane Doe (alias) and the premises herein described for said legend and/or narcotic drugs including cocaine and that such search to be made either by day or night.

(J.A. at 46.)

The state magistrate judge who issued the warrant did not ask Dunn any questions, but read the affidavit as is and signed the search warrant. Upon execution of the warrant, officers seized 25.6 grams of crack from Defendant's residence.

On April 29, 1998, a federal grand jury returned a two-count indictment charging Defendant with conspiring to distribute 25.6 grams of cocaine base and for knowingly and intentionally possessing with intent to distribute 25.6 grams of cocaine base (crack), in violation of 21 U.S.C. §§ 841, 846. Defendant moved pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), for disclosure of the confidential informant ("CI") mentioned in the affidavit accompanying the application for the warrant to search her residence. The district court adopted the recommendation of the magistrate judge to deny the motion. Defendant pled guilty to both counts in the indictment, but reserved her right to challenge the legality of the search of her residence.

After a panel of this Court issued *United States v. Allen*, 168 F.3d 293 (6th Cir. 1999), Defendant filed a motion to reconsider the district court's prior order regarding the earlier motion to disclose the CI. In her motion, Defendant also requested that the district court find that the search warrant application failed to establish probable cause and that the evidence found in her residence be suppressed. The magistrate judge recommended that Defendant's motion be denied inasmuch as

Defendant did not argue in her original motion that the affidavit "on its face" was insufficient to support a finding of probable cause; her original motion was instead filed to compel revelation of the CI. The district court rejected the magistrate judge's recommendation and ordered the magistrate judge to consider the merits of Defendant's probable cause arguments.

On April 15, 1999, the magistrate judge held a hearing on Defendant's motion to suppress. Dunn testified that on October 13, 1997, he was contacted by the informant and told that drugs were being sold from 1307 Cypress Street. Dunn testified that he took steps to corroborate the informant's information by contacting another officer, and learned that according to a tenant list, 1307 Cypress Street Court was occupied by Charlotte Leaster, a black female. His informant did not know Leaster's name, but told him that a black female was selling drugs from the residence. Dunn testified that no other corroboration was conducted because it would have been impossible in that area without being detected. Dunn testified that on October 16, 1997, he again spoke with his CI, who told Dunn that he had returned to Defendant's residence since their last conversation and witnessed another drug sale. Dunn obtained and executed a search warrant for Defendant's residence that day.

Dunn testified that in preparing his affidavit, he used a standard form that was developed in 1995 and which had been used since that time. The form is computer generated and allows officers leeway in customizing information regarding each case. He further testified that a period of 72 hours is commonly used in affidavits in order to protect the CI, as pinpointing the specific time the CI witnessed the alleged criminal activity may reveal the CI's identity.

The magistrate judge determined that the evidence should be suppressed. However, after the panel decision in *Allen* was vacated and a petition for rehearing *en banc* was granted, the district court delayed ruling on Defendant's motion until the *en banc* decision was issued. *See United States v. Allen*, 211 F.3d 970 (6th Cir.2000) (*en banc*) (hereinafter *"Allen"*). Based on the *en banc* decision, the district court found that the affidavit in this case was sufficient to establish probable cause and denied Defendant's motion to suppress the evidence. On October 20, 2000, Defendant was sentenced to 57 months imprisonment, four years supervised release (including 150 hours of community service) and a $200 special assessment.

## DISCUSSION

### I.

On appeal, Defendant primarily argues that the information in the affidavit accompanying the search warrant was stale and could not have supported the state magistrate's finding that probable cause existed for the warrant to issue. She argues that the language in the affidavit is ambiguous in that it is unclear whether Dunn intended to state that Defendant actually possessed the "narcotics" or that she merely possessed the premises. She cites authority for proposition that where an affidavit does not establish that the owner or possessor of the premises to be searched controls the contraband, "an allegation that drugs were seen on the premises becomes stale ... within 48 hours." The government counters that the information in the affidavit provided sufficient information for probable cause. In the alternative, the government contends that Dunn acted in good faith in relying on the search warrant, which was executed the day he received the information regarding drug activity at Defendant's residence.

As explained below, we believe whether the information in the affidavit was stale by the time Dunn actually applied for and executed the warrant is a close call. However, considering the totality of the circumstances, including Dunn's objective good faith belief that the warrant was valid, we will affirm the district court's judgment.

## II.

The Fourth Amendment provides that "[n]o Warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. CONST. amend. IV; *see United States v. Murphy*, 241 F.3d 447, 457 (6th Cir.2001). "The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id* (citation omitted); *see also United States v. Spikes*, 158 F.3d 913, 923 (6th Cir.1998) (explaining that the critical inquiry is whether the information provided in the affidavit establishes a fair probability that illegal drugs will be found at the location sought to be searched). In determining whether probable cause exists, a court must examine the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Because probable cause to search is concerned with facts relating to a presently existing condition ... there arises the unique problem of whether the probable cause which once existed has grown stale." *Spikes*, 158 F.3d at 923 (citations and internal quotation marks omitted). Whether information has grown stale must be determined on a case-by-case basis. *Id.* A key but by no means controlling issue is the length of time between the events listed in the affidavit and the application for the warrant. *Id.* Indeed, "[i]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. Hen-*

*son*, 848 F.2d 1374, 1382 (6th Cir.1988). In *Spikes*, this Court explained that instead of counting the number of days on a calendar, courts must concern themselves with the following variables to determine whether information in an affidavit has become stale: (1) the nature of the crime charged; (2) the criminal himself (whether nomadic or entrenched); (3) the item to be seized; and (4) the place to be searched. *Spikes*, 158 F.3d at 923.

Defendant primarily relies on the Tenth Circuit case of *United States v. Schauble*, 647 F.2d 113 (10th Cir.1981), to support her argument that, based of the events listed in the affidavit, the information had grown stale by the time the warrant was applied for and executed. In *Schauble*, the affidavit stated that a reliable informant told the affiant that he had observed "a quantity of green leafy vegetation," that he believed to be marijuana. *Id.* at 114–15. The informant also told the officer that he believed it was marijuana because he had used and had observed marijuana in the past. *Id.* at 115. The court rejected the defendant's argument that probable cause did not exist. The court noted that where an isolated violation is described in the affidavit, "it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time." *Id.* For instance, where an affidavit's description of drugs was narrow enough to describe the smoking of marijuana by visitors, then probable cause would likely dissipate within 48 hours. *Id.* However, as the informant stated that he had observed a "quantity of green vegetation," it was reasonable to presume that the drugs would be present for a longer time. *Id.*

■ Defendant cites *Schauble* for the proposition that because the warrant in the instant case did not specifically state that she possessed or controlled the co-

caine or narcotics, allegations that the drugs were merely seen on the property became stale within 48 hours. Defendant's Br. at 23. She argues that under the facts of this case more than 48 hours passed from the time the informant saw the drugs and the warrant was executed. According to the affidavit, the CI told Dunn on October 14, 1997 that he had seen drugs in the possession of Defendant on the premises. (J.A. at 46.) However, it was not until October 16, 1997, that Dunn applied for a warrant.[1] The affidavit stated that the CI within the last 72 hours had been on the premises and "while there ... saw legend and/or narcotic drugs including cocaine, the same being on said premises in the possession of and control of said Jane Doe (alias)." (J.A. at 46.)

Even if Defendant's argument regarding staleness has merit, it is not because of her reading of *Schauble*. The Tenth Circuit in that case was not stating a *per se* rule that if an affidavit fails definitively to state that the owner or possessor of the property possessed the drugs, probable cause cannot be found after the passage of 48 hours. At most, the language Defendant relies on is dicta. Further, to adopt an arbitrary time limit in a staleness analysis likely would run afoul of our cases holding that whether probable cause exists based on the information contained in an affidavit accompanying an application for a search warrant must be determined on a case-by-case basis. *See e.g., Spikes*, 158 F.3d at 923.

■ Defendant also contends that the affidavit itself is ambiguous and that it is unclear whether the affidavit intends to state that she possessed the premises or the narcotics. She contends that because the language is unclear, any doubts should be construed in her favor. We disagree. The Supreme Court has held that "courts should not invalidate ... warrant[s] by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236, 103 S.Ct. 2317. Adopting such a hypertechnical approach is inconsistent with the "Fourth Amendment's strong preference for searches conducted pursuant to warrants." *Id.*

Defendant, however, argues that what appears in the affidavit is a grammatical error inasmuch as it is unclear whether possession and control refer to the premises or the cocaine. She contends that courts have held that where grammatical errors are concerned, the problem becomes practical and not hypertechnical. *See e.g., McCullagh v. Dean Witter Reynolds, Inc.*, 177 F.3d 1307, 1309 (11th Cir. 1999) (interpreting an American Stock Exchange constitution and finding that the reading adopted by AMEX fits the grammatical rule that "modifiers should be placed next to that which they modify"); *United States v. Balint*, 201 F.3d 928, 933 (7th Cir.2000) (holding that Supreme Court has held that when interpreting a statute to glean congressional intent verb tense and grammar is significant and not merely technical); *United States v. Biocic*, 928 F.2d 112, 114 (4th Cir.1991) (explain-

---

1. Dunn testified at the April 15, 1999 hearing before the magistrate judge that he first spoke with the CI on October 13, 1997, while in the affidavit submitted to the state magistrate, he claims he spoke with CI on October 14, 1997. (J.A. at 46.) Defendant does not raise this discrepancy as an issue. While the government does point out the discrepancy, it notes that the "minor variance appears immateri-

al," and that it was not noticed by the parties or the court below. We will assume for purposes of our analysis that Dunn's first conversation with the CI occurred on October 14, 1997 inasmuch as Defendant does not challenge this fact, and both parties assume in their briefs that the first conversation occurred on that date.

ing that in statutory interpretation, the key is whether the law gives a person an opportunity to discern what is illegal; given ambiguity in any written text, ultimate inquiry as to whether text gives such opportunity is a practical consideration, not a hypertechnical one).

Despite the above authority, which does not deal with language contained in affidavits, we believe that it would make no sense for the affidavit in this case to be interpreted as meaning something other than that Defendant was in possession and control of the cocaine. It is unlikely that Dunn meant that someone else on the premises controlled or possessed the narcotics and that Defendant only possessed the premises and not the narcotics. To interpret the affidavit as Defendant would have us to do distorts reason. *See Allen*, 211 F.3d at 975 (explaining that "[a]ffidavits are not required to use magic words, nor does what is obvious in context need to be spelled out"). Further, the cases Defendant cites to support her argument are unavailing. None of these cases involve language contained in affidavits, which are drafted by lay police officers in the comparatively "hurried context" of obtaining a warrant, *Gates*, 462 U.S. at 236, 103 S.Ct. 2317, but rather these cases pertain to language construction in constitutions and statutes drafted after much deliberation by lawyers and legislatures. We also note that while Defendant vigorously argues on appeal that the language in the affidavit is ambiguous, she failed to raise this issue below, despite filing numerous motions regarding this warrant and affidavit.

Nevertheless, we believe that Defendant's argument still is not without some merit. In *Allen*, as in this case, the affidavit stated that the confidential informant had been in the residence of the defendant within 72 hours and had seen the defendant possess drugs. *Allen*, 211 F.3d at 972. However, in *Allen*, the affiant received the information from the confidential informant, applied for the search warrant and executed it all on the same day. *Id.* at 971–72. For some reason, in the instant case this was not done. Two days (48 hours) passed from the time Dunn received the information from the CI and applied for and executed the warrant. Thus, even if staleness was not at issue in *Allen*, it arguably might be an issue under the facts of this case. *Spikes*, 158 F.3d at 923.

The government argues that Dunn explained at the hearing below that he had spoken with the CI again on October 16, 1997, the day he applied for the warrant. The CI told him on October 16, 1997 that he (the CI) had visited Defendant's residence again and seen another drug sale. However, this information is wholly irrelevant in determining whether the state court magistrate, who did not know about the information the CI provided to Dunn on October 16, 1997, properly found that probable cause existed for the warrant to issue. This Court has long held that only the information presented under oath and affirmation to the judicial officer who issued the warrant may factor into the calculus of whether probable cause existed for the warrant to issue. *See e.g., Tabasko v. Barton*, 472 F.2d 871, 874–75 (6th Cir. 1972) (refusing to consider proof to support probable cause where statement at issue was not in affidavit and state court record failed to show that affiant made the statement under oath in state court before the issuing magistrate); *see also United States v. Harris*, 255 F.3d 288, 292–93 & n. 1 (6th Cir.2001) (holding that affidavit officer submitted to state court judge coupled with officer's sworn testimony before that judge regarding informant's controlled drug purchases at defendant's residence sufficed to establish probable cause). There is no indication that the state magis-

trate judge who issued the warrant in the instant case knew about the October 16, 1997 meeting between Dunn and the CI; only that he knew about the October 14, 1997 meeting. We therefore will not consider the October 16 meeting in our probable cause analysis.

As already explained, according to the information in the affidavit and presented to the magistrate, Dunn waited at least 48 hours from the time he spoke with the CI regarding alleged drug activity at Defendant's residence before he sought a warrant. The information presented to the state magistrate on October 16, at most, stated that "Jane Doe" possessed cocaine at her residence approximately 48 hours prior to that date. Applying the four factors enunciated in *Spikes* to the facts of this case, we believe that the information was arguably stale.

Mere possession of drugs alone is not necessarily indicative of on-going drug activity. *United States v. Payne*, 181 F.3d 781, 790 (6th Cir.1999) (explaining that "[d]rugs are not the types of objects that are likely to be kept, and ... tip contained no indication of ongoing activity"). Thus, of the four factors to be considered under *Spikes*, the nature of the activity (possession), and item to be seized (cocaine) do not necessarily lead to a conclusion that on October 16, 1997, two days after an undetermined amount of drugs were seen on the premises, drugs would still have been found at Defendant's residence. The other two *Spikes* factors involve the alleged criminal and the place to be searched. *Spikes* explains that the inquiry focuses on whether the suspected criminal is nomadic or entrenched and whether the place to be searched is a "mere criminal forum of convenience or secure operational base." *Spike*, 158 F.3d at 923. It can be reasonably inferred from the affidavit that Defendant was not nomadic inasmuch as the affidavit states that she possessed, occupied and/or resided in the premises. However, there is no indication in the affidavit that the place to be searched was subject to on-going sales. *Cf. Spikes*, 158 F.3d at 918–19 (explaining that affidavit showed long-term, on-going criminal activity at particular premises).[2]

The government argues that this Court has held that a period of five-days is not too long to support a belief that cocaine may be found on a particular premises, thus an argument involving 48 hours is without merit. *See United States v. Murphy*, 241 F.3d 447 (6th Cir.2001). In *Murphy*, a confidential informant purchased drugs while under the surveillance of officers. *Id.* at 449. The affidavit stated that the buy occurred within the last five days. *Id.* at 457. Examining the totality of the circumstances, the Court held the information was not stale. *Id.* at 458. However, *Murphy* is distinguishable in that the affidavit described drug trafficking activity and not mere possession. Information related to drug trafficking does not grow stale as quickly as information regarding mere possession. *Payne*, 181 F.3d at 790. Further, in rejecting the defendant's staleness arguments, the Court in *Murphy* noted that the information provided by the task force agent [to the issuing judicial

---

2. The government points out that Dunn testified before the federal magistrate judge that it would be unlikely that he would have usually sought a warrant for a mere possession charge. However, no authority is cited for the proposition that such knowledge is common knowledge or that the state magistrate judge knew that warrants are usually sought only for suspected sellers and never for those who use narcotics. The government also points out the neighborhood where Defendant's apartment is located is a community known for drug activity. However, this does not mean that Defendant was a drug dealer. The government fails to point to any proof that Defendant was a known drug dealer.

officer] and the execution of the search occurred on the same day. *Murphy,* 241 F.3d at 458.

In any event, under the standard enunciated in *Spikes,* we believe a close question exists as to whether the information in the affidavit, alleging that an unnamed CI had seen Defendant possess an unspecified amount of cocaine at least two days before the warrant was obtained and executed, had grown stale. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317 (holding that probable cause inquiry is whether considering totality of the circumstances, "there is a fair probability that contraband ... will be found in a particular place.").

However, Defendant's probable cause argument nevertheless must be considered in light of this Court's holding in *Allen.* Indeed, we believe that it is because of *Allen* that this case presents a close question. In *Allen,* this Court held that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, *in the recent past,* a neutral and detached magistrate may believe that evidence of a crime will be found." *Id.* at 976 (emphasis added).

In the instant case, the affidavit states that the CI had been on the premises and witnessed "Jane Doe," [later identified as Defendant] in possession of narcotics. Although the CI was not named, this is not fatal to the affidavit. *See Gates,* 462 U.S. at 233, 103 S.Ct. 2317 (explaining that in determining the totality of the circumstances, a deficiency in one area, for instance the informant's reliability, may be compensated by a strong showing in other areas). As the district court noted, the affidavit in this case contains information regarding the informant's reliability that the affidavit in *Allen* did not. For instance, the affidavit in this case expressly alleges that the informant had provided reliable information in the past that had led to arrests and prosecutions in narcotics cases. (J.A. at 46.) The affidavit in *Allen* contained no such information. Other than Dunn's apparent 48–hour delay, Defendant concedes that the affidavit in this case and the one in *Allen* are virtually indistinguishable. Thus, in light of *Allen's* rather expansive holding with regard to finding probable cause, we believe it is a close question whether a neutral and detached magistrate may have believed, despite the 48–hour delay, that probable cause existed when the warrant issued in the instant case.[3] *Allen,* 211 F.3d at 976.

■ However, assuming the information in the warrant had grown stale, the government argues that Dunn had a reasonable, good faith belief that probable cause existed and therefore was justified in relying on the search warrant. We agree.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that where a search

---

**3.** Defendant also relies on *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996) to support her staleness argument. As Defendant correctly notes, the Court in *Allen* explained that what was ultimately fatal to the warrant in *Weaver* was "its lack of probable cause to believe any marijuana previously observed by the CI would be left to be discovered by a search for there was no mention of the quantity of drugs observed. Nor was there any attempt to note behavior indicating ongoing sales." *Allen,* 211 F.3d at 974. The Court in *Weaver* essentially held that the officers should have corroborated, for example, through police surveillance, the CI's claims. *Id.* However, the Court in *Allen* limited *Weaver's* holding "that the uncorroborated search warrant was defective" to the facts of that case. *Id.* Further, in *Allen,* the affidavit, which Defendant admits is similar to the one involved in this case, also failed to mention either the quantity of drugs the CI observed or behavior indicating ongoing drug sales. *Id.* at 971–72.

warrant is found to be deficient, it may still be upheld where an officer relied on it in objective good faith. *Id.* at 905, 104 S.Ct. 3405. In *Leon,* the district court and the Ninth Circuit found that there was insufficient probable cause for the warrants involved in that case to issue because, among other reasons, the informant's knowledge of the criminal activity alleged was stale. *Id.* at 904, 104 S.Ct. 3405. The Supreme Court, however, did not consider whether the information in the affidavits was stale, but focused only on the issue briefed and argued before the Court, that is, whether the Fourth Amendment should be used to bar "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. In embarking on that inquiry, the Supreme Court assumed without deciding that probable cause was lacking. *Id.* The Court noted that the purpose of the exclusionary rule is to deter police misconduct, an objective that is not furthered by suppressing evidence seized by an officer who in good faith relied on a search warrant subsequently held to be invalid. *Id.* at 919–21, 104 S.Ct. 3405. The Court held that where an officer's reliance on the issuing magistrate's determination of probable cause is "objectively reasonable," evidence seized pursuant to a search warrant subsequently held to be invalid need not be suppressed. *Id.* at 922, 104 S.Ct. 3405. The Court explained, however, that an officer's good faith reliance on a search warrant is inappropriate where (1) the affiant misled the magistrate, (2) the magistrate abandoned his judicial role, (3) the affidavit was so lacking in indicia of probable cause that official belief is unreasonable; and (4) in some instances, the failure to particularize the place to be searched or things to be seized. *Id.* at 922, 104 S.Ct. 3405.

Defendant concedes, as she must in light of *Allen,* that had Dunn received the information in the affidavit from the CI on October 16, the same day that he obtained and executed the search warrant, the information in the affidavit could not be considered stale. Dunn testified below that on October 16, he again spoke with the CI, who informed him that the CI had visited Defendant's residence again after their conversation on October 14, and had once again witnessed a black female selling drugs at the residence. Dunn further testified that he contacted another officer to obtain a copy of a tenant list for the property described in the affidavit, and that the list showed that Defendant lived at that address. "When assessing the objective good faith of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *United States v. Johnson,* 78 F.3d 1258, 1263 (8th Cir.1996); *see also Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (explaining that "whether it was objectively reasonable to conclude that a given search was supported by probable cause . . . will often require examination of the information possessed by the searching officials"); *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405 (in assessing good-faith inquiry, all of the circumstances may be considered). Considering the totality of the circumstances in the instant case, including the fact that the CI informed Dunn on October 16 that he had witnessed a second drug transaction at Defendant's residence, Dunn reasonably could have believed that probable cause existed for the search. Our determination regarding Dunn's good faith belief is further bolstered by the fact that whether probable cause existed for the warrant to issue is at least arguable in light of *Allen. See United States v. Taxacher,* 902 F.2d 867, 872 (11th Cir.1990)

(noting that in "*Leon*, the Court observed that reasonable jurists had disagreed about whether there was probable cause on the facts of that case [and this] observation ... was merely intended to bolster the Court's holding that the officer had acted reasonably under the circumstances"). We believe that considering the totality of the circumstances, Dunn's reliance on the search warrant in this case was not unreasonable.

## CONCLUSION

For the forgoing reasons, we AFFIRM the judgment of the district court.