UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary Lynn WEAVER, Defendant–
Appellant.

No. 94–6575.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1995.

Decided Nov. 8, 1996.

William Cohen, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Nashville, TN, for U.S.

Bob Lynch, Jr. (argued and briefed), Nashville, TN, for Gary Weaver.

Before JONES, BATCHELDER, and MOORE, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Gary Lynn Weaver appeals his conviction for the unlawful possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). For the reasons that follow, we reverse.

I.

On February 23, 1994, a federal grand jury returned a two-count indictment against Gary L. Weaver in the District Court for the Middle District of Tennessee for the unlawful possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), respectively. On April 18, 1994, Weaver filed a motion to suppress the introduction and use of firearms and ammunition seized from his residence during the execution of a search warrant. On August 23, 1994, the district court denied the motion. Trial to a jury occurred on August 30 and 31, 1994. The jury convicted Weaver on both counts. On November 16, 1994, the judge sentenced him to 18 months imprisonment, 3 years supervised release, fines, and costs. This timely appeal followed.

The principal issues on appeal are (1) whether the affidavit presented for issuance of the search warrant contained sufficient particularized facts from which the issuing magistrate could find a substantial basis for probable cause; and, (2) if the affidavit was defective, whether the law enforcement officers acted in good faith reliance on the warrant when executing the search.

II.

A.

In 1986 Weaver pled guilty to the felony charge of illegally engaging in the interstate distribution of explosives without a license. As a condition of his probation, Weaver could not thereafter own or possess firearms or ammunition. After his conviction, Weaver disposed of all but two of the nine rifles he owned. In early May 1993, these two rifles, along with some live ammunition, bullet molds, and other items used in home-loading ammunition, were returned to the Weaver home at 3031 Hartford Drive in Murfreesboro, Tennessee, by a friend who could not afford to purchase them. As Weaver was not present at the time of return, his wife, aware of the probation conditions, instructed the friend to place all the returned items in a detached "outbuilding" located behind the residence, with the intent to dispose of the items herself without informing Weaver. She did not, however, dispose of the items and they remained in the outbuilding.

Later that month, on May 23, 1993, Detective Mickey McCullough of the Vice Division of the Murfreesboro Police Department received a tip from a known and previously reliable confidential informant, Philip Dinovo, regarding a possible marijuana sales operation occurring on or near Hartford Drive in

Murfreesboro. Dinovo informed McCullough that he learned of the operation from a third person he knew only as "Charlie." Charlie was not an informant and was unaware of Dinovo's connection to the police. Dinovo said he would attempt to purchase some marijuana with Charlie at the Hartford Drive location. McCullough provided Dinovo with $100 for the purchase and instructed the informant to contact him with the drugs or to return the money. The police did not conduct surveillance of the drug transaction or believe that surveillance was necessary.

At midday on May 25, 1993, Dinovo and McCullough met again. The informant informed McCullough that, on the previous day, he and Charlie went "to the home of Mr. Gary Weaver on Hartford Drive" and jointly purchased one-half ounce of marijuana. J.A. at 136–37. The informant also told the detective that Charlie believed Weaver was growing marijuana at the house, although Dinovo personally observed no indications of a marijuana growing operation. McCullough then drove Dinovo to Hartford Drive, at which time the informant identified the Weaver house as the location of the marijuana purchase. By calling the Murfreesboro Electric Department, McCullough verified that Weaver held the utilities account for the property identified. Although aware of Weaver's prior conviction, McCullough had no prior knowledge connecting Weaver with illegal drugs or drug distribution. The detective took no additional steps to corroborate the informant's story.

Based on this information, McCullough immediately prepared a preprinted form affidavit to obtain a search warrant for the Weaver premises, with the intent "to make a case for the felonious possession of marijuana to keep the identity of the informant anonymous." J.A. at 131.[1] McCullough's preprinted affidavit was composed of boilerplate text with a few open spaces for additional information:

> Personally appeared before *James W. Buckner,* Judge of the Court of *Gen. Session* for Rutherford County, Tennessee the undersigned *Mickey McCullough,* a lawful

officer of said County and State, who makes affidavit that there is probable cause to believe, and that affiant does believe, that *Gary Weaver* is now unlawfully keeping a quantity of *marijuana* for the purpose or with the intention of unlawful possession, sale or transportation thereof, and upon his, her or their person, or in his, her, or their possession, custody or control upon premises used, occupied, possessed or controlled by him, her, or them, and which premises are located and described as follows: *A two story brick dwelling house having a city designated street address of 3031 Hartford Drive. Having a two car attached garage and a detached brick building behind the main house having a concrete driveway and a mailbox erected adjacent to said driveway with the numbers 3031 attached to it. Having a city designated street address of 3031 Hartford Drive, M'boro, Ruth. Co. TN.*

> Affiant further makes affidavit that on the *25* day of *May, 1993,* affiant received information from a reputable and reliable person, whose name and identity have been disclosed to the Judge to whom this application is made, that Affiant verily believes, and accordingly represents to the Court, that the said informer is truthful, reliable and credible, and that the information so given is accurate and reliable, because: (1) the said informer appears to have intelligence and unimpaired physical senses; (2) the said informer appears to affiant to have sufficient personal knowledge or familiarity or experience with the contraband substance herein mentioned to be able to identify the same by sight, smell and other senses, insofar as such identification can usually be made by the human physical senses unaided by laboratory analysis; (3) there has been a previous occasion, or occasions, on which the same informer has given information of violation of law of the state, which information thereafter was found to have been accurate and reliable; (4) that within the last 72 hours said informant was upon the above described premises and while thereon per-

---

1. McCullough testified that he never planned to charge Weaver on the misdemeanor marijuana sale to Dinovo. J.A. at 120.

sonally observed (*Gary Weaver*) having personal possession and control over a quantity of (*marijuana*) being held expressly for the purpose of unlawful distribution. Affiant knows of no reasons why said informer would falsify or fabricate any of the information given. Consequently, affiant believes that all or some portion of the said (*marijuana*) still remains upon the above described premises.

J.A. at 39 (emphasis denotes handwritten information). At some point after 2:00 p.m. that afternoon McCullough presented the affidavit to the judge and may have orally supplemented the affidavit with additional information. The judge issued the warrant at that time.

At 8:25 p.m. that same evening, McCullough led a team of six officers in executing the warrant. Upon searching the residence and outbuilding, the authorities found a quarter-ounce of marijuana but uncovered no other evidence of possession, distribution, or growth of marijuana on the property. The search team also discovered the rifles, ammunition, and other ammunition-related items left in the outbuilding and arrested Weaver for having these articles in his possession. The authorities did not charge Weaver with any marijuana-related offenses.[2]

Prior to trial, Weaver moved to suppress the evidence taken from his property due to lack of probable cause for the search. The district court denied his motion, finding without discussion that the averments of the affidavit were not false and the search warrant was not defective. J.A. at 72. Weaver contends that the district court erred in denying his motion because McCullough's boilerplate affidavit lacked sufficient particularized facts of criminal activity to justify a search of his residence. Moreover, the appellant argues that McCullough's search could not have been in good faith because the detective was executing a search warrant based on his own insufficient affidavit. Therefore, without either probable cause or a good faith exception to the exclusionary rule, Weaver asserts the

evidence seized under the defective warrant should be suppressed.

The government responds that the affidavit included ample factual information to show probable cause, regardless of whether some of the facts were included in preprinted language. Moreover, even if the affidavit and warrant were defective, the government argues the authorities acted in good faith reliance on the judge's neutral and detached determination of probable cause. Therefore, the government contends that the evidence discovered in the search should be admitted.

### B.

When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). When the district court itself is a reviewing court, as in this case, this court owes the district court's conclusions no particular deference. *Id.* at 1362–63 (citations omitted).

In *Illinois v. Gates*, the Supreme Court established that a warrant must be upheld as long as the "magistrate had a 'substantial basis for ... concluding' that a search would uncover evidence of wrongdoing...." 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *United States v. Pelham*, 801 F.2d 875, 877–78 (6th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). This court pays great deference to the determinations of probable cause made by a state magistrate, whose findings "should not be set aside unless arbitrarily exercised." *Pelham*, 801 F.2d. at 877 (citing *United States v. Swihart*, 554 F.2d 264, 270 (6th Cir.1977)). Yet, "the court must ... insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for police." *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). As such, "[d]eference to the [issuing] magistrate ... is not boundless." *United States v. Leon*, 468

---

**2.** Weaver purchased the discovered marijuana a few days before the execution of the search warrant, apparently for personal use. McCullough testified that he declined to charge Weaver on this misdemeanor possession violation. J.A. at 131.

U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . . ." U.S. Const. amend. IV. The protections of personal privacy and property embodied in the amendment require that probable cause "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1947). For the magistrate to be able to properly perform this official function, the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 1034–35, 28 L.Ed.2d 306 (1971); *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). These supporting facts need not be based on the direct knowledge and observations of the affiant, but may also come from hearsay information supplied by an informant. *Jones v. United States*, 362 U.S. 257, 269–70, 80 S.Ct. 725, 735–36, 4 L.Ed.2d 697 (1960). From whatever source, the information presented must be sufficient to allow the official to independently determine probable cause; "his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333.

In a case involving an anonymous tip, the *Gates* Court established a "totality of the circumstances" test for determining probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238, 103 S.Ct. at 2332. Although rejecting the previous two-pronged "veracity" and "basis of knowledge" test fashioned in the cases of *Aguilar v. Texas, supra*, and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court stressed that these factors remain highly relevant in the new analysis. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328; *Pelham*, 801 F.2d at 877. Moreover, the *Gates* Court maintained that the formerly independent factors should be considered together, emphasizing that a deficiency in one area could be counterbalanced by a "strong showing" in the other:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activity in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

462 U.S. at 233, 103 S.Ct. at 2329–30.

The present affidavit is based almost entirely on hearsay information supplied by a previously reliable confidential informant. This court applies the *Gates* "totality of the circumstances" analysis to cases involving known, reliable informants. *E.g., United States v. Smith*, 783 F.2d 648, 650–51 (6th Cir.1986). In so doing, we recognize that two factors are critical to determining whether an affidavit based on a confidential informant's tip provides a "substantial basis" for finding probable cause: (1) an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's tip] to greater weight than might otherwise be the case"; and, (2) corroboration of the tip through the officer's independent investigative work is significant. *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.) (citing *Gates*, 462 U.S. at 234, 244, 103 S.Ct. at 2330, 2335), *cert. denied*, —— U.S. ——, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994).

Weaver argues that the affidavit presented was a "bare bones" composition of boilerplate language, with few particularized facts linking this suspect and his residence to illegal drugs or any other criminal activities. The government responds that preprinted boilerplate language can support probable cause as long as there are sufficient particu-

larized facts presented. An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a "bare bones" affidavit. *See Aguilar,* 378 U.S. at 114, 84 S.Ct. at 1514. In determining whether an affidavit is "bare bones," the reviewing court is concerned exclusively with the statements contained within the affidavit itself. *Whiteley,* 401 U.S. at 564–65, 91 S.Ct. at 1034–35; *United States v. Hatcher,* 473 F.2d 321, 323 (6th Cir.1973).[3] As we are aware that "affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation,'" we remain cautious not to interpret the language of affidavits in a "hypertechnical" manner. *Pelham,* 801 F.2d at 878 (citing *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). Nevertheless, it is imperative that affidavits accurately reflect the facts of the particular situation at hand. *United States v. Richardson,* 861 F.2d 291, 294–95 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). The use of generalized boilerplate recitations designed to meet all law enforcement needs for illustrating certain types of criminal conduct engenders the risk that insufficient "particularized facts" about the case or the suspect will be presented for a magistrate to determine probable cause. *See In re Young,* 716 F.2d 493, 500 (8th Cir.1983) (holding unacceptable an FBI affidavit of "broad, boilerplate statement describing in a general way" applications, reports, and records commonly kept in bail bond operation); *see also United States v. Barham,* 595 F.2d 231, 246 (5th Cir.1979), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981) (characterizing sufficient affidavit as "honest and straightforward recitation (unadorned by the boilerplate so frequently and woodenly inserted to satisfy Fourth Amendment standards in the most artificial fashion)"); *contra*

*United States v. Romo,* 914 F.2d 889, 898 (7th Cir.1990) ("As long as there is sufficient information to provide probable cause for the search, the fact that the affidavit is partially pre-printed is irrelevant."), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991).

Reading this affidavit in a "practical, common-sense" manner, the only claim of possible wrongdoing is the averment that, within three days prior to the affidavit date, the informant was on the suspect premises and, while there, he saw some quantity of marijuana "expressly for the purpose of unlawful distribution." J.A. at 39. McCullough presents no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own "belief" that these quantities of marijuana were present "for the purpose or with the intention of unlawful possession, sale or transportation," or even that marijuana would be on the premises when the warrant was executed. *Id.* The government asks us to recognize that McCullough did not include additional drug-related information in the affidavit, including the circumstances of the drug transaction between Weaver and Dinovo, because to do so would have tipped Weaver off to the identify of the informant and possibly jeopardize the informant's safety. A limited privilege exists to withhold information which could identify an informant. *United States v. Jenkins,* 4 F.3d 1338, 1340 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). Nevertheless, particularized facts regarding alleged wrongdoing that did not identify Dinovo could have been discovered and included in the affidavit without necessarily jeopardizing the identity of the informant.[4] From this affidavit, all other information that the government cites as particularized facts, that is, the suspect's name, address, and description of the residence, could arguably be obtained by any

---

**3.** The government's attempt to bolster McCullough's initial affidavit through a second, more-detailed affidavit and testimony at the suppression hearing are without merit. Due to the brevity of the district court's order, there is no way for this court to determine the extent to which the district court relied on the additional information in its deliberations.

**4.** For instance, a description of the marijuana and how it was maintained, identifying aspects of the location in the residence where the marijuana or distribution paraphernalia was seen or kept, a description of Weaver, information on the distribution operation, etc. could have been elicited from the informant, either at the time of this transaction or over the course of a surveillance.

person passing the Weaver house. As presented, the combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity.

Nevertheless, we bear in mind that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts ... [in which] '[i]nformants' tips, like all other clues and evidence ... may vary greatly in their value and reliability.'" *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972)). Moreover, the circumstances of each case are unique. *See Leon*, 468 U.S. at 918, 104 S.Ct. at 3418 (suppression of evidence obtained pursuant to warrant must be addressed on case-by-case basis). Consequently, it is possible that weak factual information may be bolstered if the authorities undertook probative efforts to corroborate an informant's claims through independent investigations. *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334.[5]

 Regarding the reliability of this informant, the affidavit states that McCullough was relying on an informant who could identify marijuana and who on "occasion, or occasions, ... [had] given information of violation of law of the state, which information there-after was found to have been accurate and reliable." J.A. at 39. There is no indication in this affidavit that this informant provided reliable information in the past leading to drug-related arrests or prosecutions. More important, however, is that McCullough possessed only Dinovo's tip linking Weaver to possible drug activities, yet undertook no substantive independent investigative actions to corroborate his informant's claims, such as surveillance of the Weaver residence for undue traffic or a second controlled purchase made with officers viewing. The discovery of the utilities account holder, by itself, is insignificant. *See United States v. Gibson*, 928 F.2d 250, 252–53 (8th Cir.1991) (insufficient showing of probable cause when officer only corroborated "innocent details" of utility records for account name, revenue agency for physical description, and car titles, and "[t]here was neither surveillance nor observation of unusual civilian or vehicular traffic at the address, nor were there very short visits characteristic of drug trafficking.")

Thus, even assuming the reliability of Dinovo as an informant, our review of this affidavit reveals a paucity of particularized facts indicating that a search of the Weaver residence "would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. In sum, we hold that, when viewed in the totality of the circumstances, this "bare

---

5. Panels of this court have differed on the need for corroboration in situations regarding tips from known, reliable informants. For instance, in *United States v. Smith*, this court considered the following affidavit prepared from the tip of a known, confidential informant who had provided reliable information in the past:

> On the 20th day of August, 1984, at approximately 5:00 p.m., the affiant received information from a reliable informant that Eric Helton was producing marijuana at his residence. Acting on the information received, affiant conducted the following independent investigation: On August 21, 1984 at 11:30 a.m. Detective William Stweart [sic] observed a marijuana plant growing beside the residence of Eric Helton.

783 F.2d at 649. The panel found that the affidavit "though sketchy" appeared to satisfy the *Gates* test, stating twice, however, that the informant's tip alone would not have been sufficient, even though the informant was known and had provided reliable information in the past. *Id.* at 650, 651. The crucial information the court relied upon in upholding the affidavit was the corroboration of the growing plant. *Id.* at 651; *Leake*, 998 F.2d at 1365.

Subsequently, in *United States v. Finch*, this court addressed a defense challenge to the following search warrant affidavit as "conclusory":

> [A]ffiant has talked with a reliable informant of Memphis, Shelby County, Tennessee who has given the affiant other information in the past which has been found to be true and correct, and which has resulted in several narcotic arrests and drug seizures. This reliable informant stated that within the past five (5) days of January 19, 1991, this reliable informant has been inside the above described residence and has seen the above described person storing and selling Cocaine inside this residence.

998 F.2d 349, 352 (6th Cir.1993). In upholding the affidavit, the *Finch* court did not address whether corroboration was necessary, finding that the authorities had provided "a statement of the affiants' reasons for their belief as to the existence of probable cause." *Id.*

bones" affidavit failed to provide sufficient factual information for a finding of probable cause. Therefore, our inquiry turns to whether exclusion of the items seized during the search is appropriate.

### C.

■ The government contends that even if the warrant was issued without a showing of probable cause, McCullough relied on the warrant's validity in good faith, thus raising an exception to the exclusionary rule, as announced in *United States v. Leon, supra.* In *Leon,* the Supreme Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. at 905, 104 S.Ct. at 3411. The Court noted, however, four specific situations where the good faith reliance exception was inappropriate: first, if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.* at 914, 104 S.Ct. at 3416; second, if "the issuing magistrate wholly abandoned his judicial role," *id.*; third, if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 915, 104 S.Ct. at 3416–17 (citations omitted), or in other words, where "the warrant application was supported by [nothing] more than a 'bare bones' affidavit," *id.*; and, fourth, if the "warrant may be so facially deficient—i.e., failing to particularize the place to be searched or the things to be seized ...," *id.* at 923, 104 S.Ct. at 3421 (citations omitted).

Regarding the third situation, Weaver asks this court to apply the Fifth Circuit's reasoning in *United States v. Barrington,* 806 F.2d 529 (5th Cir.1986). Drawing from the Supreme Court's note in *Leon* that "[n]othing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circum-

stances under which the warrant was obtained to conduct the search," 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24, the Fifth Circuit extrapolated that an officer who submitted an insufficient "bare bones" affidavit to the magistrate, and then executed the resulting warrant himself, could not have acted in objective good faith reliance on the warrant. 806 F.2d at 532. The government avers that *Barrington* is distinguishable, as McCullough presented significantly more information in his affidavit than the officer in that case.[6]

Although the Fifth Circuit's reasoning appears to be a logical extension of *Leon,* the threshold question is one of reasonableness: whether the "reliance on the validity of the warrant was objectively reasonable, that is, 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Leake,* 998 F.2d at 1366 (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23). Viewed objectively, McCullough possessed some information from a previously reliable informant regarding possible criminal activities but 1) possessed no prior personal knowledge of any unlawful activity by this suspect, or at the suspect residence, other than an old conviction on completely unrelated circumstances; 2) possessed no present personal knowledge of any connection between this suspect and marijuana possession or distribution; 3) had not personally seen any marijuana at the suspect residence nor conducted any visual reconnaissance of the property to determine whether marijuana was likely to be present on the property; and 4) possessed only third-party hearsay information about a possible marijuana grow operation on the property. With little firsthand information and no personal observations, McCullough should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing, or growing marijuana. *Cf. United States v. Broussard,* 80 F.3d 1025, 1034 (5th Cir.1996) (holding preprinted boilerplate affidavit re-

---

**6.** The *Barrington* affidavit "stated only that Captain Solomon 'received information from a confidential informant' who is 'known to Captain Phil

Solomon and has provided information in the past that has led to arrest and convictions.'" 806 F.2d at 531.

citing generalizations about evidence in drug dealer's residence, without more information, insufficient to render officers' reliance objectively reasonable). Had the detective made some meaningful "effort to corroborate the informant's report at issue, 'an entirely different case' would have been presented." *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334 (citing *Aguilar*, 378 U.S. at 109 n. 1, 84 S.Ct. at 1511 n. 1). We believe a reasonably prudent officer would have sought greater corroboration to show probable cause and therefore do not apply the *Leon* good faith exception on the facts of this case.[7] Accordingly, the items seized at the Weaver residence should be suppressed.

### III.

"The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949). The Fourth Amendment does not require an officer to reinvent the wheel with each search warrant application. Nevertheless, because of the threat of generalization when particular facts are necessary, we remain concerned about boilerplate language in affidavits or search warrants. *See United States v. Brown*, 49 F.3d 1162, 1175 (6th Cir.1995) (Batchelder, J., dissenting) (preprinted boilerplate language is insufficient for "suitable words of reference" required for incorporation of affidavit in search warrant). It takes but a few minutes more for law enforcement authorities to obtain and include sufficient particularized facts so that magistrates may perform their detached function fully informed. *United States v. Schauble*, 647 F.2d 113, 116 (10th Cir.1981). Such time was not taken in this case.

For the foregoing reasons, the district court's denial of the motion to suppress is REVERSED.

---

7. Because this kind of pre-printed affidavit form had been in use for a substantial period of time in Murfreesboro and apparently had the blessing of the local prosecutor and General Sessions Judge, we think it is important to stress that in the situation at hand, Officer McCullough should have recognized that he did not even possess sufficient factual information to constitute probable cause.