**UNITED STATES of America Plaintiff–Appellee,**

v.

**Tommy D. JARRELL Defendant–Appellant.**

**No. 02–5067.**

United States Court of Appeals, Sixth Circuit.

June 25, 2003.

Before CLAY and GIBBONS, Circuit Judges; and DUGGAN,* District Judge.

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

DUGGAN, District Judge.

Defendant–Appellant, Tommy D. Jarrell (Jarrell), entered a conditional plea of guilty in the United States District Court for the Eastern District of Tennessee on one count of violation of 21 U.S.C. § 841(b)(1)(B). Jarrell's plea was conditioned on being able to challenge the search that formed the basis for the indictment and being able to appeal any decision of the court regarding this challenge. The district court denied Jarrell's motion to suppress and Jarrell subsequently entered his guilty plea. After the pre-sentence report was prepared, Jarrell objected to the report and moved for a downward departure under United States Sentencing Commission, *Guidelines Manual,* § 5K2.13 (Nov.2000), for diminished capacity. The district court denied Jarrell's motion and sentenced Jarrell to 13 months of imprisonment and three years of supervised release. Jarrell filed a timely appeal of the district court's denial of his motion to suppress and his motion for downward departure.

## Background

On October 24, 2000, Jarrell was indicted on one count of violation of 21 U.S.C. § 841(b)(1)(B) for manufacturing in excess of 100 marijuana plants. This Indictment arose out of information received from a confidential informant. The confidential informant had contacted Federal Bureau of Investigation Task Force Agent Kim Rively, who in turn contacted Special Agent Rodd Watters of the Tennessee Bureau of Investigation. As set out in the Affidavit for Search Warrant by Agent Watters:

> The informant, who has not provided any information in the past, advised that a subject living in Chattanooga, at the present time, was growing marijuana with the aide of indoor growing equipment. The informant advised that, TOMMY D. JARRELL, a person known by the informant, was growing marijuana in an old garage located in the rear of the property located at 507 Tunnel Blvd. The informant also advised that JARRELL had approximately $20,000.00 worth of growing equipment, including lights that hang from the ceiling, in the garage. The informant also stated that he/she had been in the grow in the last thirty (30) days and the grow was active. This informant advised that JARRELL had two large rottweiler dogs positioned outside of the old garage. This informant is not working off any charge, nor are any charges pending, nor has the informant asked for any reward in this case.

Based on this information, Agent Watters and another agent visited the location on December 10, 1999. Agent Watters found the residence at 507 Tunnel Blvd. fit the description that the informant had given. Agent Watters noticed that the doors and windows of the detached garage on the premises were covered with plywood, there was a "beware of dog" sign on the front corner of the residence, a large rottweiler was chained near the front of the garage, and there were two to three electrical drop cords and "a garden hose running from the main residence to the detached garage."

Based on this information, Agent Watters issued a subpoena to the Electrical Power Board to obtain electrical power usage records for two years on the 507 residence and two other nearby residences on the same side of Tunnel Blvd. According to Agent Watters' affidavit for a search warrant, the usage records revealed that the 507 residence used two to three times that which was used at one of the other addresses, and four to five times that which was used at the other address. In

addition, Agent Watters asserted that the electricity was not being billed to Jarrell.[1]

Agent Watters decided to conduct thermal imaging of the detached garage to determine whether "Grow Lights," which emit extreme heat, were present. On December 16, 1999, Agent Watters conducted the thermal imaging on the detached garage at the 507 residence and two other similarly situated garages. He found a very strong heat signature emitting from the detached garage at the 507 residence. Neither of the other two heat signatures Agent Watters obtained from the other residences were comparable to the 507 residence. A search warrant was then issued based on this Affidavit.

The search warrant was executed on December 21, 1999. The agents found "an extensive indoor marijuana cultivation operation which included 124 growing marijuana plants, marijuana grow lights, ballasts, growing soil, fertilizer, nutrients, etc. in the detached garage of 507 Tunnel Blvd."

### Discussion

Jarrell appeals the district court's denial of his motion to suppress and the district court's denial of his motion for downward departure of his sentence pursuant to USSG § 5K2.13.

*Motion to Suppress:*

▮ Jarrell filed a motion to suppress in the district court, arguing, *inter alia,* that the search warrant violated the Fourth Amendment. The district court found that because of the Supreme Court's decision in *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), the thermal imaging used by Agent Watters, without a separate search warrant for the thermal imaging, was a Fourth Amendment

violation and, therefore, could not be considered in determining whether a search warrant should issue. Without the thermal imaging, the district court found that "the question of probable cause is quite close, but just misses the mark." The court, however, applied the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and denied Jarrell's motion. Jarrell appeals the court's decision. This Court reviews a district court's findings of fact on a suppression issue under the clearly erroneous standard, and its conclusions of law under a de novo standard. *United States v. Avery,* 137 F.3d 343, 348 (6th Cir.1997).

In *Leon,* the Supreme Court held that a good faith exception applies to the Fourth Amendment exclusionary rule. *Leon,* 468 U.S. at 905, 104 S.Ct. 3405. The good faith exception provides

> that the fruits of a constitutionally infirm search need not necessarily be suppressed unless: (1) the warrant contained a knowing or reckless falsehood; (2) the issuing judge acted as a mere "rubber stamp" for the police; or (3) the warrant and affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid.

*United States v. Logan,* 250 F.3d 350, 366 (6th Cir.2001)(citing *Leon,* 468 U.S. at 919–923, 104 S.Ct. 3405). Jarrell focuses his "inquiry on ... 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrates [sic] authorization[.]' " In other words, Jarrell argues under the third

---

1. Agent Watters's affidavit states: "[b]ased on training and experience it is normal practice for persons involved in indoor cannabis oper-

ations to not have bills put in their own names."

prong above that the executing officers in this case could not have reasonably assumed that the warrant was valid.

As discussed above, Agent Watters relied on the informant's tip, his surveillance of the home, his experience in law enforcement, the power usage records, and the thermal imaging. At the time Agent Watters used the thermal imaging, the issue of whether thermal imaging constituted a search under the Fourth Amendment had not been decided by the Sixth Circuit, *United States v. Black,* 1999 WL 357759, 1999 U.S.App. LEXIS 9146 (6th Cir. May 11, 1999)(remanding to district court, among other issues, the issue of whether thermal imaging constituted a search under the Fourth Amendment); however, several other circuits had found that the warrantless use of thermal imaging on properties ranging from out buildings to homes was constitutional under the Fourth Amendment. *See United States v. Kyllo,* 190 F.3d 1041 (9th Cir.1999); *United States v. Robinson,* 62 F.3d 1325 (11th Cir.1995); *United States v. Myers,* 46 F.3d 668 (7th Cir.1995); *United States v. Ford,* 34 F.3d 992 (11th Cir.1994); and *United States v. Pinson,* 24 F.3d 1056 (8th Cir. 1994). Only the Tenth Circuit at the time had found that the use of thermal imaging constituted a search thus requiring a warrant under the Constitution. *See United States v. Cusumano,* 67 F.3d 1497 (10th Cir.1995), *vacated on other grounds,* 83 F.3d 1247 (10th Cir.1996)(*en banc*). Subsequently, the Supreme Court in *Kyllo* held that thermal imaging does constitute a search and that "it will remain for the District Court to determine whether, without the evidence it provided, the search warrant issued ... was supported by probable cause- and if not, whether there is any other basis for supporting admission of the evidence that the search pursuant to the warrant produced." *Kyllo,* 533 U.S. at 40, 121 S.Ct. 2038. In the case at bar, the district court applied *Kyllo* and decided

that without the thermal imaging, probable cause did not exist for the warrant, but a basis for supporting the admission of the evidence did exist through the *Leon* good faith exception.

Jarrell argues that because there was a split in the circuit courts regarding use of thermal imaging at the time the warrant was issued, Agent Watters's reliance on the warrant, which included the thermal imaging, was not made in good faith. The Court disagrees. Aside from the thermal imaging, Agent Watters also relied on the informant's tip, his corroboration of the informant's information, the electrical power usage records, and his knowledge as a police officer with experience in the area of marijuana growing cases. Therefore, even if Agent Watters had not considered the thermal imaging evidence, his actions cannot be categorized as unreasonable. Furthermore, his reliance on the thermal imaging evidence at a time when courts of appeals disagreed on the use of such imaging in the context of the Fourth Amendment cannot be said to be objectively unreasonable.

■ Jarrell next contends, essentially, that the information supplied by the informant was not necessarily credible or reliable, that the corroboration was innocuous, and that the informant did not state how he or she was qualified to identify the plants as marijuana or their stage of growth. Based on the foregoing, he argues that Agent Watters "had no basis for good faith belief that marijuana was on the premises at the time he executed the search warrant."

The Court finds that Agent Watters acted in good faith when he relied on the search warrant issued pursuant to his Affidavit that provided not only the information received from the informant, but also Agent Watters' corroboration of the information, his further investigations using the

power usage records and the thermal imaging, and his many years of experience in this field. Therefore, the warrant was not so deficient as to render the agent's reliance on its unreasonable.

Relying on *United States v. Weaver*, 99 F.3d 1372 (6th Cir.1996), Jarrell's final argument is that the affidavit supporting "the search warrant was insufficient because it was a bare-bones affidavit that did not show probable cause." In *Weaver*, this Court found the affidavit at issue was a "bare-bones" affidavit and "failed to provide sufficient factual information for a finding of probable cause." *Id.* at 1380. The officer attesting in *Weaver* relied on an informant's hearsay information regarding the defendant possessing and growing marijuana. *Id.* at 1375. The officer did nothing more than verify that the defendant was named on the utilities account for the residence in question. *See id.* Based on this information, the officer filled in a boilerplate affidavit, which was then used to issue the search warrant.

The *Weaver* Court defined a "bare-bones" affidavit as "[a]n affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge...." *Id.* at 1378. The affidavit in the case at bar is far from being a "bare-bones" affidavit. The affidavit in this case bares no resemblance to the affidavit in *Weaver*, in that it is not boilerplate, is particularized, and is supported by corroboration; therefore, the Court's holding in *Weaver* does not apply to the case at bar. Accordingly, the district court's application of the *Leon* good faith exception and its denial of Jarrell's Motion shall be affirmed.

*Downward Departure:*

■ At the sentencing hearing, Jarrell moved for a downward departure pursuant to USSG § 5K2.13, which provides, in pertinent part, "[a] sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." Jarrell contends that while the court recognized his mental problems, the court nevertheless refused to grant the downward departure. Jarrell argues that the court's denial was clearly erroneous, an incorrect application of the guidelines, and that there is a factual issue regarding whether the district court "was aware of his discretion to depart downward on grounds of diminished capacity."

A district court's denial of a downward departure is only reviewable by this Court "if the district court incorrectly believed it lacked the authority to grant such a departure as a matter of law." *United States v. Owusu*, 199 F.3d 329, 349 (6th Cir.2000) (citations omitted). The district court "has no duty 'to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so.'" *Id.* (citation omitted). This Court is "reluctant to treat as ambiguous a ruling which does not affirmatively state that the judge knew he could depart downward but failed to do so." *Id.* (citation and quotations omitted). Therefore, this Court assumes that the district court exercised its proper discretion when it concluded that the downward departure was not warranted. *Id.*

In the case at bar, the record reveals that Jarrell made his motion for downward departure at the sentencing hearing. In response, the district court opined,

Yeah. Well, I'd just have to say, I know you've got some problems, but I don't see that there is any significantly reduced mental capacity here. He does have a bipolar problem. He does have some difficulties with controlled substances, well, and alcohol, too, but because he's had the use of— I see Paragraph 33, 34, of the pre-sentence report, he's been evaluated at Valley and other

places. But I don't see, I don't see this as a significantly reduced mental capacity.

Because there is nothing in the record to indicate that the district court incorrectly believed that it lacked the authority to grant the downward departure as a matter of law, Jarrell is not entitled to appeal the court's decision. *See Owusu,* 199 F.3d at 349. Accordingly, Jarrell's appeal on this issue shall be dismissed for lack of jurisdiction. *United States v. Shabazz,* 263 F.3d 603, 611–12 (6th Cir.2001).

For the reasons set forth above, the district court's denial of Jarrell's Motion to Suppress is AFFIRMED and Jarrell's appeal of the downward departure issue is DISMISSED.