NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0015n.06
Filed: October 6, 2004

No. 03-6504

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DONALD GLENN TOLBERT, | ) | |
| | ) | |
| Petitioner – Appellant | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | AT PADUCAH |
| Respondent – Appellee | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, MOORE and GILMAN, Circuit Judges.

**MERRITT, Circuit Judge.**  This is a direct criminal appeal in which the defendant entered into a plea agreement under Rule 11(a)(2), Fed. R. Crim. P., reserving the right to appeal the district court's determination that evidence of drug distribution obtained under a search warrant should not be suppressed.  The defendant received a sentence of 75 months.  The question before us is whether probable cause existed for the search warrant.  For the reasons stated below, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Donald Tolbert lived in a mobile home located in Livingston County, Kentucky.  Trooper T.J. Williams (currently with the Kentucky State Police but formerly a deputy sheriff in Livingston County) testified that Tolbert had been known to law enforcement since 1994 or 1995, when police had executed a search warrant at Tolbert's earlier address and found drug paraphernalia and possible

methamphetamine residue. No arrests were made at that time. In the months leading up to execution of the warrant in this case, police received ten to fifteen anonymous phone calls about drug activity and vehicle traffic at Tolbert's house. Based on these calls, Trooper Williams and other officers conducted regular surveillance of the house over a three to four month period. This included observing and counting cars, as well as checking license plates to determine the identity of visitors. In this way, so-called "known drug users" were identified at the house at least five to ten times. J.A. Vol. I. at 90-93.

Then, on July 20, 2001, the father of a teenage girl (either sixteen or seventeen) contacted police and requested assistance with his daughter who was reportedly "out of control" and possibly on drugs. When Trooper Williams went to the home, the father also requested assistance in identifying the owner of a phone number that had appeared on his caller-ID, who the father believed had been talking with his daughter. The number was later identified as belonging to Tolbert. Trooper Williams requested that the juvenile and her father accompany him back to the Sheriff's office, where he spoke with her for approximately 45 minutes. During this discussion, the girl informed Williams that she had received methamphetamine from Tolbert both the day before and the day of the statement. J.A. Vol. I at 95-97. Trooper Williams met with a state assistant district attorney who prepared an affidavit for Williams. The affidavit stated:

> On the 20 day of July, 2000[1], at approximately 3:30p.m. Deputy T.J. Williams was given the following information from a juvenile. The juvenile said that Donald Tolbert gave Juvenile methamphetamine on the night of July 19, 2001. Juvenile received the meth while inside Donald Tolbert's trailer on Harper Rd. Ledbetter, Ky. Also juvenile stated that there was meth and marijuana inside the trailer on July 19, 2001. On July 20, 2001 Juvenile stated that Juvenile was also given meth by Donald

---

[1]Although the affidavit is dated "20 day of July, 2000," Trooper Williams testified this was a mistake and that it was actually signed on July 20, 2001. J.A. Vol. I at 86.

Tolbert while inside his trailer today. Juvenile also saw more meth today inside his trailer. Deputy T.J. Williams has received information in the past 30 days [from] unknown callers that Donald Tolbert was dealing drugs at his trailer on Harper Rd. Ledbetter, Ky.

Acting on the information received, affiant conducted the following independent investigation: That Donald and Beth Tolbert lives in the last trailer on the left on Harper Rd. Ledbetter, Ky (known as Harper Trailer Pk.). That Donald Tolbert's blue older cougar is at his trailer on Harper Rd. Ledbetter, Ky.

J.A. Vol. I at 30-31.

Trooper Williams testified that he did not provide any additional background information or evidence to the issuing trial commissioner at the time he sought the warrant, such as observations from police surveillance or the results of the search in 1994 or 1995. Based on the affidavit, the trial commissioner issued a search warrant, which was subsequently executed by police. They seized approximately eleven grams of methamphetamine and three syringes from Tolbert's bedroom as well as digital scales, a calculator, and approximately 165 grams of methamphetamine from Tolbert's van parked on the premises.

The district court initially suppressed this evidence, ruling that the warrant lacked probable cause and the *Leon* good-faith exception did not apply. However, on a Motion to Reconsider, the court reversed itself, holding that the *Leon* exception did apply. The court did not reconsider its original determination that probable cause was lacking. Tolbert entered a conditional guilty plea and now appeals the district court's ruling.

## DISCUSSION

### I. Standard for Determining Probable Cause

In *Illinois v. Gates*, the Supreme Court adopted a "totality of the circumstances" test for determining probable cause, describing it as a "practical, nontechnical conception" that deals with

probabilities and the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 462 U.S. 213, 231 (1983). In reviewing the sufficiency of probable cause, a court is limited to evidence that was actually presented to the issuing judge. *Whiteley v. Warden,* 401 U.S. 560, 565 n.8 (1971).

In finding a lack of probable cause, the district court relied on the 6th Circuit's interpretation of *Gates* as articulated in *Weaver*, which required the consideration of two factors for finding probable cause from an informant's statement: "1) an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's tip] to greater weight than might otherwise be the case; and, 2) corroboration of the tip through the officer's independent investigative work is significant." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) . In applying this standard, the district court noted "the information [provided by the juvenile] was remarkably devoid of detail" and contained very little information that would allow one to determine the juvenile's veracity or reliability. J.A. Vol. I at 43-44.

*Weaver* has been modified, however, in the *en banc* decision of *United States v. Allen*, in which the Court made it clear that the two-factor test from *Weaver* is not a rigid constitutional requirement. 211 F.3d 970, 974 (6th Cir. 2000). While the factors identified in *Weaver* do contribute to the constitutional "totality of the circumstances" analysis, they are not necessarily determinative. Where other circumstances provide reason to find an informant credible and reliable, the factors may take on less significance. The assessment of probable cause is a highly fact-specific inquiry and depends on an analysis of the particular case.

**II. Under *Allen*, Trooper Wilson's Affidavit Was Sufficient to Establish Probable Cause**

In finding that the affidavit failed to establish probable cause, the district court provided a laundry list of possible details that either the juvenile had failed to provide to Trooper Williams or that Trooper Williams had failed to include in his affidavit.[2] Referencing the *Weaver* factors, Judge Johnstone stated, "[i]n short, the information she provided certainly was not an 'explicit and detailed description of alleged wrongdoing.'" J.A. Vol. I at 44. In contrast, in *Allen*, the Court stated, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. The proper starting point is the information that *was included* in the affidavit.

1. Juvenile's identity was known to police. It was clear from the context in the affidavit that Trooper Williams received the information directly from the juvenile, even though her name was not mentioned. Trooper Williams testified that it is standard procedure in the sheriff's office and the county attorney's office to exclude juveniles' names from search warrants in order to protect their identities. Also, by stating that the information was received from "a Juvenile," it was clear that the informant was not anonymous. She was not a person who sent an anonymous letter or made an anonymous telephone call. She gave the information directly to Williams. He knew who she was.

The Court in *Miller* refused to view a named informant who had no record of providing the police with information with the same skepticism as an anonymous one. *United States v. Miller*, 314 F.3d 265, 269-70 (6th Cir. 2002). Similarly, we do not treat an unnamed juvenile, whose identity

---

[2]"She did not provide a description of the interior or exterior of the trailer; she did not state why she was in the trailer or how she came to know defendant; she did not state how she got to the trailer or if she had been there on earlier occasions; she did not state where in the trailer defendant kept the drugs or the quantity or type of drugs that were present; she did not state how she was familiar with or able to identify methamphetamine or marijuana; and she did not provide a physical description of defendant in even the most general terms." J.A. Vol. I at 43-44.

is known to the police, the same as an anonymous tipster simply because her name is excluded from the affidavit under routine police procedures to protect the confidentiality of minors. The reliability that comes from knowing an informant's identity is not based on inclusion of her name in the affidavit, but rather on the fact that if she is lying she may be prosecuted under state laws for making a false statement to police.[3] *Miller*, 314 F.3d at 270. The Supreme Court implicitly adopted this position in *United States v. Harris*. 403 U.S. 573, 584-85 (1971) ("Nor is it especially significant that neither the name nor the person of the informant was produced before the magistrate. The police themselves almost certainly knew his name . . . .").

2. <u>Juvenile's account was first-hand, recent and specific</u>. The juvenile reported that she had received methamphetamine from Tolbert both on the previous day, July 19, 2001, and on the day of the report, July 20, 2001. She reported that she had been inside his trailer and had personally seen both meth and marijuana present in the trailer on that day. Such specific, personal, and first-hand accounts have been considered reliable. "In a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the informant's] direct viewing of marijuana in [the defendant's] house." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). The Court in *Allen* also addressed this issue, stating: "The information alleged [in the affidavit] was of direct personal observation of criminal activity. Corroboration is not a necessity in such a case." *Allen*, 211 F.3d at 976.

3. <u>Juvenile's statement was against penal interest</u>. By admitting to police that she had received illegal drugs from Tolbert, the juvenile exposed herself to the possibility of criminal

---

[3]*See* KY. REV. STAT. ANN. § 519.040 (2004) ("A person is guilty of falsely reporting an incident when he . . . knowingly gives false information to any law enforcement officer with the intent to implicate another . . . .").

prosecution in Kentucky's juvenile court system.[4] There is no evidence in the record that the police made any offers of immunity or leniency for the juvenile's cooperation. She was not under arrest, nor does it appear from the record that she was in police custody or restrained from leaving.

The Supreme Court emphasized the credibility that such an admission brings to an informant's statement, noting: "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search." *Harris*, 403 U.S. at 583.

4. <u>Juvenile's statement was corroborated through recently received anonymous reports to police</u>. Although the Court in *Allen* held that corroboration is not necessarily required when informants are not anonymous, Trooper Williams nevertheless did provide corroborating evidence in his affidavit. He stated that in the prior 30 days he had received anonymous phone calls that Tolbert was dealing drugs from his trailer at the same address where the juvenile claimed she had received drugs from Tolbert. Williams also confirmed that the location described by the juvenile was in fact the residence of the Tolberts.

As the Supreme Court stated in *Gates*, "[i]t is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,'" thus providing "a substantial basis for crediting the hearsay." *Gates*, 462 U.S. at 244-45 (internal citations omitted). Here, the police had already received anonymous phone calls that Tolbert was dealing in drugs. These anonymous tips alone were not sufficient to establish

---

[4]*See* KY. REV. STAT. ANN. § 640.030 (2004) (allowing juveniles convicted of felony offenses to be treated to the same sentencing procedures as adults).

probable cause. The officers waited until someone with recent, first-hand knowledge presented herself before they sought a search warrant. The juvenile's testimony was consistent with other tips and was accurate in describing the location of Tolbert's residence.

Taken as a whole, the evidence presented to the issuing judge in this case was adequate to find probable cause, and therefore the district court's opinion is **AFFIRMED**. We need not discuss the *Leon* good-faith exception as an alternative basis for upholding the decision below.