**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4653
_____

UNITED STATES OF AMERICA

v.

QUINTON WALLACE,
also known as Quinton Williams,
also known as Quinton Jerome Williams,
also known as Quinton Drayton,
also known as Dagel Gillard

Quinton Wallace,
                                        Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 08-cr-00052-001)
District Judge:  Honorable Louis H. Pollak

_____

Submitted Under Third Circuit LAR 34.1(a)
March 15, 2011
_____

Before: RENDELL, BARRY and CHAGARES, <u>Circuit Judges</u>

(Opinion Filed: March 22, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

Quinton Wallace appeals from an order of the District Court denying his motion to suppress evidence seized from his home pursuant to a search warrant. At issue is whether the Court correctly determined that, even though the warrant was invalid, the good-faith exception to the exclusionary rule applied. We will affirm.

I.

On January 10, 2008, Special Agent Gary Malone of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") applied for a warrant to search a home in Philadelphia where, according to a confidential source ("C/S"), Wallace lived. Attached as part of the warrant application was Agent Malone's affidavit, in which he stated that he had been an ATF special agent for approximately three years, had participated in numerous investigations into drug gangs, narcotics distribution, and illegal weapons use in the Lansdowne Avenue corridor of West Philadelphia, and had worked with confidential informants during these investigations.

Specific to his investigation of Wallace, Agent Malone stated that a "reliable" C/S who was once a low-level drug dealer working in the Lansdowne Avenue corridor had provided information about Wallace's possession of illegal firearms and drugs. App. at 69. The C/S had worked with ATF agents and "[m]uch of the information [previously provided] has been verified by other sources and none of the [information] has ever been disproved." *Id.* The C/S described the location where Wallace lived and identified

Wallace from a photograph. The C/S stated that between November 2007 and late December 2007, Wallace had been the victim of a "demoralizing" street robbery where another individual took Wallace's gun, a Ruger Model P89 pistol. *Id.* at 70. The C/S reported that during approximately the same time period, Wallace engaged in an unsuccessful robbery of a "drug house," and that Wallace "would surely be the victim of retaliation by robbery or shooting." *Id.* Agent Malone stated that he found no corroborating evidence of an attempted drug robbery at the location specified, but that, in his experience, "parties involved in such incidents do not contact the police due to their own criminal liability." *Id.*

The C/S further stated that because of these incidents, Wallace was in conflict with rival drug dealers and was afraid to leave his residence. The C/S claimed to have seen Wallace at the entrance to his home on January 6, 2008, in possession of a new silver pistol with a wooden grip. The C/S also claimed to have learned from Wallace on January 9, 2008 that he was expecting a "fresh supply" of bulk crack cocaine and marijuana in the very near future. *Id.* at 71.

Agent Malone attempted to corroborate the C/S's information. He ran a criminal history check in the Philadelphia Police database, which showed that in six of eight contacts with police, Wallace's address was listed as the address in question, and in all five of Wallace's adult arrests, the arrests had been for drug violations, including one involving firearms violations. Agent Malone drove to Wallace's home and confirmed

that it appeared as described by the C/S. He also determined that another wanted person was listed as residing at Wallace's address, and that this person might have access to Wallace's firearm. Based on the information from the C/S and his own investigation, Agent Malone concluded that "a search of the [] property will yield evidence of violations of the federal firearms and narcotics laws, including but not limited to felon in possession of a firearm and using, carrying, or possessing a firearm in furtherance of a drug trafficking offense." *Id.* at 72.

A magistrate judge signed the search warrant on January 10, 2008. The next day, ATF agents executed the warrant and found Wallace in possession of a stolen firearm, ammunition, narcotics, and other evidence of drug trafficking.

A grand jury indicted Wallace for possession of marijuana with intent to distribute (Count One); possession of marijuana with intent to distribute within 1,000 feet of a school (Count Two); possession of a firearm in furtherance of a drug trafficking crime (Count Three); and possession of a firearm by a convicted felon (Count Four). Wallace moved to suppress the physical evidence seized. Stating that it was a "close call," the District Court concluded that, given the lack of specificity about the basis of the C/S's knowledge and the "minimal corroboration," Agent Malone's affidavit did not "provide a substantial basis for the magistrate judge's finding of probable cause," and, thus, the warrant was invalid. *Id.* at 18. The Court refused to suppress the evidence, however, because the "affidavit [was] not so plainly lacking in probable cause as to render the

4

searching officers' reliance unreasonable." *Id.* at 19. Accordingly, the good-faith exception applied.

Wallace subsequently pled guilty to Counts Two, Three, and Four, reserving his right to appeal the District Court's ruling on the suppression motion. The Court sentenced Wallace to ninety-three months of imprisonment followed by eight years of supervised release. This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's denial of the motion to suppress. *See United States v. Loy*, 191 F.3d 360, 365 (3d Cir. 1999). In contrast, "we conduct only a deferential review of the initial probable cause determination made by the magistrate." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

Wallace contends that the District Court erred in finding that the agents' search of his home came within the good-faith exception. The government contends that the good-faith exception applied, and that the Court erred in finding the warrant invalid for lack of probable cause. We need not address whether the Court erred in finding the warrant invalid because we find, for the reasons explained below, that it correctly determined that the good-faith exception applied. *See id.* at 545 (declining to review probable cause determinations because good-faith exception applied).

Even where a warrant has been invalidly issued, a district court need not suppress

5

evidence seized pursuant that warrant "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984); *see also Stearn*, 597 F.3d at 560-61 ("If an officer obtains a warrant and executes it in good faith, 'there is no police illegality and thus nothing to deter.'" (quoting *Leon*, 468 U.S. at 921)). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Loy*, 191 F.3d at 367 (quoting *Leon*, 468 U.S. at 922 n.23).

Typically, "[t]he mere existence of a warrant [] suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001). There are four circumstances, however, in which the good-faith exception is not applied:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Stearn*, 597 F.3d at 561 n.19 (internal quotation marks and citation omitted).

Wallace relies on the "so lacking in indicia of probable cause" circumstance, citing

6

primarily to an opinion from the Sixth Circuit where the court reversed the denial of a suppression motion after finding that a search warrant based on an informant's tip lacked probable cause and that the good-faith exception did not apply. *See United States v. Weaver*, 99 F.3d 1372, 1377-81 (6th Cir. 1996). In finding that the officer who obtained the warrant and executed the search was not entitled to the good-faith exception, the Sixth Circuit noted that the officer

> 1) possessed no prior personal knowledge of any unlawful activity by this suspect, or at the suspect residence, other than an old conviction on completely unrelated circumstances; 2) possessed no present personal knowledge of any connection between this suspect and marijuana possession or distribution; 3) had not personally seen any marijuana at the suspect residence nor conducted any visual reconnaissance of the property to determine whether marijuana was likely to be present on the property; and 4) possessed only third-party hearsay information about a possible marijuana grow operation on the property. With little firsthand information and no personal observations, [the officer] should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing, or growing marijuana.

*Id.* at 1380. The court concluded that "a reasonably prudent officer would have sought greater corroboration to show probable cause and therefore [we] do not apply the *Leon* good faith exception on the facts of this case." *Id.* at 1381.

The facts here present a case very different from *Weaver*. Agent Malone's review of Wallace's criminal history showed that all five of Wallace's prior arrests as an adult had been for drug violations, and one involved firearms, and, thus, were related to the crimes under investigation here. In contrast, in *Weaver*, the only relevant criminal history involved a firearms offense, which was unrelated to marijuana distribution, the crime

7

under investigation there. *Id.* at 1375. Additionally, while the Sixth Circuit faulted the investigating officer for failing to conduct surveillance to determine whether marijuana was "likely to be present on the property," *id.* at 1380, such first-person investigation was likely impossible in this case because the suspected crimes involved unlawful possession and use of a firearm—an easily concealable item—and Agent Malone had information that Wallace was afraid to leave his home, making first-person investigation even more improbable. Finally, we note that in *Weaver*, the Sixth Circuit was influenced by its determination that the affidavit in support of the search warrant contained only "bare bones" information filled in by hand between otherwise "boilerplate language." *See id.* at 1379-80. In contrast, the affidavit here contained several typewritten pages of particularized descriptions of the C/S's observations and Agent Malone's attempts at corroboration.

Taking all of the circumstances into consideration, we cannot say that a reasonably well-trained officer who reviewed the affidavit and search warrant would have known that the search was illegal. The affidavit provided a general description of the C/S and noted that the C/S previously had provided information that never had been disproved, including information relevant to the investigation of the Lansdowne Avenue Gang, of which Wallace was suspected to be a member. The affidavit then explained, in detail, criminal events that the C/S had witnessed or learned of, as well as Agent Malone's attempts to verify the information and his reasons for why an immediate search was

8

necessary. The Magistrate Judge used her judgment and found probable cause to issue the warrant. Our case law instructs that in circumstances such as this, where the affidavit contained more than "mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient," and where a magistrate has found probable cause, then "officers are entitled to rely" on the magistrate's findings and the good-faith exception applies. *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993).

## III.

We will affirm the order of the District Court.