**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0871n.06
Filed: December 20, 2007

**No. 06-2233**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR** |
| **v.** | ) | **THE WESTERN DISTRICT OF** |
| | ) | **MICHIGAN AT GRAND RAPIDS** |
| **COREY YARBROUGH (12374-040),** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: DAUGHTREY and GILMAN, Circuit Judges; EDMUNDS,[*] District Judge

**PER CURIAM.** Defendant-appellant Corey Yarbrough appeals the district court's

denial of his motion to suppress the evidence. Yarbrough was convicted on two counts of

possession with intent to distribute narcotics. Before trial, Yarbrough filed a motion to suppress

the evidence, claiming that the search warrant was not supported by probable cause. The district

court denied his motion. On appeal, Yarbrough challenges the district court's ruling and also

claims that he is entitled to an evidentiary hearing to determine the sufficiency of the affidavit

pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). For the reasons discussed below, this

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District
of Michigan, sitting by designation.

Court holds that Yarbrough is not entitled to a *Franks* hearing, and the opinion of the district court is AFFIRMED.

I.    **Factual and Procedural History**

On September 10, 2004, Officer Craig Stouffer was on duty with the Kalamazoo Valley Enforcement Team, a multi-jurisdictional drug task force, when he received a telephone call from an anonymous female caller. The caller stated that two individuals, Corey Yarbrough and Poohpa Hampton, were located at 1806 North Burdick Street in Kalamazoo, Michigan, and possessed three pounds of marijuana, a quantity of heroin, and a quantity of powder cocaine. The caller also reported that a white Land Rover with South Carolina plates was parked at the location and was possibly stolen.

Officer Stouffer immediately began an investigation. He discovered that Yarbrough had several outstanding warrants for failure to pay child support and that Hampton had an outstanding warrant for driving on a suspended license. Officer Stouffer drove to the area of 1806 North Burdick, where he found that the address was for a vacant lot. Across the street, however, at 1807 North Burdick, Officer Stouffer saw a house with a white Land Rover parked in the driveway. The car had South Carolina plates that were visible from the street. Officer Stouffer ran the plates and learned that they were registered to a different vehicle. Officer Stouffer also learned that the house was a rental unit. He contacted the landlord and was told that Yarbrough and Hampton had been renting the house since August 2004.

Officer Stouffer provided all of this information to his supervisor, Sergeant Marty Buffenbarger. Sergeant Buffenbarger in turn relayed the information to Officer Craig Habel and

instructed him to perform a "knock-and-talk" investigation at the residence. A "knock-and-talk," as its name suggests, is where a police officer knocks on the door of a residence and asks its occupants for information. It was Officer Habel's (incorrect) understanding that the anonymous caller had provided the 1807 address.

Officer Habel and two other officers went to the residence at approximately 2:00 p.m. All three officers were in uniform. Officer Habel approached the Land Rover and looked in the window for evidence that the car was stolen, such as a "punched" steering column. Although Officer Habel did not see anything to suggest the vehicle had been stolen, he did see a small amount of marijuana residue on the center console of the vehicle. Officer Habel and the other officers then approached the rear door of the residence. Officer Habel knocked at the door for two to four minutes and announced that he was a police officer loudly enough to be heard inside. While he was at the door, Officer Habel smelled a very strong odor of burnt or burning marijuana.

When nobody answered, Officer Habel returned to the Land Rover, opened the door, and retrieved the marijuana. Upon searching the car, Officer Habel found additional marijuana in the driver's side "cubbyhole." He also found a bill of sale that identified Hampton as the car's owner. Officer Habel field tested a portion of the marijuana from the center console and received a positive result.

While Officer Habel was still at the residence, a woman pulled into the driveway. She said that she was there to pick up Yarbrough, who is the father of one of her children. After that, Officer Habel returned to the police station to prepare a search warrant affidavit. Several

officers, including Officer Stouffer, continued to observe the residence. Approximately ten minutes after Officer Habel left the scene, Officer Stouffer saw two adult males, an adult female, and a baby leave the residence. He recognized the two adult males as Yarbrough and Hampton. Officer Stouffer testified that these individuals could not have entered the house after Officer Habel had knocked at the door. Hampton, the female, and the baby got into one car and left the scene. Yarbrough drove away in a different car and was arrested later that day on his outstanding warrants.

Officer Habel learned of this information over the radio and included it in the affidavit. The affidavit also reported Officer Habel's experience as an officer, the information received from the anonymous caller (whom the affidavit referred to as an "intelligence report"), the police investigation that corroborated the tip, the presence of marijuana in the vehicle, the smell of marijuana outside the house, Yarbrough's outstanding warrant, and Yarbrough's attempt to evade the police.

Later that day, a search warrant was issued by Judge Hannon of the Eighth District Court in Kalamazoo County. The warrant authorized a search of 1807 North Burdick for "[a]ny forms of marijuana, cocaine, heroin, and/or controlled substances," evidence of drug dealing, and firearms. The search warrant was executed at approximately 4:30 p.m. that day. Officers Stouffer, Habel, and Buffenbarger each participated in the search, and each testified that the residence smelled of freshly burnt or burning marijuana. During the search of the residence, the officers found a large amount of contraband. In Hampton's bedroom and an adjoining attic, the police found $6,127 cash, a loaded revolver, a rifle, ammunition, three bags of marijuana, a bag of powder cocaine, crack cocaine, a digital scale, plastic baggies, and other drug paraphernalia.

4

In Yarbrough's room, the police found powder cocaine, crack cocaine, a scale, plastic baggies, and a glass pipe. In the dining room, the police found individually packaged quantities of crack cocaine. All told, the government seized 24.43 grams of powder cocaine and more than 60 grams of crack cocaine.

On June 30, 2005, a federal grand jury returned a five-count indictment against Yarbrough and Hampton. Yarbrough was indicted on two counts, possession with intent to distribute five grams or more of cocaine base ("crack" cocaine), 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On September 26, 2005, Yarbrough filed a motion to suppress the evidence in which he claimed the search of the residence violated the Fourth Amendment because the search warrant was not supported by probable cause. The district court denied the motion. Yarbrough proceeded to trial where, on March 3, 2006, a jury found him guilty on both counts. He was sentenced to one hundred sixty months on each count, to be served concurrently. This timely appeal followed.

## II.     Jurisdiction

The district court had jurisdiction over this case under 18 U.S.C. § 3231. This Court has jurisdiction over Yarbrough's timely appeal under 28 U.S.C. § 1291.

## III.    Standard of Review

This Court reviews the district court's decision on a motion to suppress under two complementary standards. We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004)(citing

5

*United States v. Hurst*, 228 F.3d 751, 756 (6th Cir.2000)).  We review  the evidence "in the light most likely to support the district court's decision."  *Id.* (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).  Whether a search and seizure was reasonable under the Fourth Amendment is a question of law.  *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)(citing *United States v. Harris*, 255 F.3d 288, 291 (6th Cir. 2001); *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998)).  The district court's findings about the truth or falsity of statements in the affidavit, and about the reckless character of any falsehoods, are factual findings we review for clear error.  *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002)(citing *United States v. Ayen*, 997 F.2d 1150, 1152-53 (6th Cir. 1993)).

**IV.     Discussion**

On appeal, Yarbrough presents two grounds for reversal.  First, he claims the search warrant was not supported by probable cause and that the ensuing search therefore violated the Fourth Amendment.  Second, he argues this case must be remanded for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  We will address each argument in turn.

**A.     Probable Cause for the Search Warrant**

The United States Constitution commands that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  When we review a magistrate judge's determination of probable cause for a search warrant, we "simply . . . ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)(quoting  *Illinois v. Gates*, 462 U.S. 213,

6

238-39 (1983)).  We afford great deference to the magistrate's determination of probable cause, and we will not set it aside unless we find that the magistrate's discretion was arbitrarily exercised.  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(*en banc*).  We will uphold a warrant where the "magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing."  *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993)(quoting *United States v. Pelham*, 801 F.2d 875, 877-78 (6th Cir. 1986)).

Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.  A judicial officer presented with a request for a search warrant must consider the totality of the circumstances and make a "practical, common-sense" determination whether probable cause exists.  *Id.*  The affidavit must indicate a nexus between the place to be searched and the evidence sought.  *Laughton*, 409 F.3d at 747 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(en banc)).  This nexus may be established by the nature of the items and normal inferences of where a person would keep such items.  *See United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976).  For example, known drug dealers are likely to keep drugs in their homes.  *See United States v. Missouri*, 644 F. Supp. 108, 111 (E.D. Mich. 1986)(citing *United States v. Gant*, 759 F.2d 484 (5th Cir. 1985); *United States v. Johnson*, 660 F.2d 749, 753 (9th Cir. 1981)).

The district court found that the information set forth in Officer Habel's affidavit was sufficient to establish probable cause.  On appeal, Yarbrough contends this finding was erroneous because the evidence in this case consisted only of three distinct elements, each of which was insufficient to support a finding of probable cause: the anonymous tip, the marijuana residue in the vehicle, and the odor of marijuana outside the house.  We note at the outset that probable

cause is determined by looking to the totality of the circumstances, not to individual pieces of evidence in isolation. *Gates*, 462 U.S. at 238. Nonetheless, for the sake of clarity, we will address individually each element of evidence challenged by Yarbrough.

### 1. Anonymous Tip

A magistrate judge may rely on hearsay evidence to evaluate whether probable cause exists for a search warrant. *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003)(citing *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999); *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996); *Jones v. United States*, 362 U.S. 257, 269-70 (1960)). In order "to receive a high level of consideration, allegations from an anonymous tipster must demonstrate veracity, reliability, and a sound basis for knowledge." *Id.* (citing *Florida v. J.L.*, 529 U.S. 266, 271-72 (2000); *Gates*, 462 U.S. at 230). The district court found that Officer Habel's affidavit contained a sufficient degree of corroboration to show that the anonymous tipster was both credible and reliable and that the tipster had a reliable basis for the information provided to Officer Stouffer. Yarbrough counters that the police confirmed only innocent details and failed to corroborate the presence of drugs inside the residence.

Yarbrough points out that tips from known informants have more value than those from unknown ones. *Elkins*, 300 F.3d at 651. While this is true, an anonymous tip that is corroborated by independent police work may be sufficient to establish probable cause. *See Gates*, 462 U.S. at 243-44; *United States v. Sonagere*, 30 F.3d 51, 53-54 (6th Cir. 1994). In *Gates*, the Court found probable cause based on an anonymous tip after seemingly innocent facts were corroborated: a named individual would fly to Florida, stay overnight, pick up his car, and

drive north. *Id.* at 244. The police corroborated this information, and the Court found that "[b]ecause an informant is right about some things, he is more probably right about other facts, including the claim regarding the [defendant]'s illegal activity." *Id.* (citation omitted). The Court concluded that "[i]t is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id.* at 244-45 (citation and internal quotation marks omitted).

Here, as in *Gates*, the affidavit reported that the police corroborated numerous innocent facts: the first and last name of both occupants of the residence, their address on North Burdick, and that a white Land Rover with South Carolina plates was at the residence. Although the affidavit stated that the informant had reported the address as 1807 North Burdick, the informant actually reported the address as 1806 North Burdick. The district court found that this mistake was the result of miscommunication between Sergeant Buffenbarger and Officer Habel, and was not included intentionally or recklessly. This conclusion is not clearly erroneous. Officer Stouffer learned of the address from the anonymous caller and relayed the information to Sergeant Buffenbarger, who in turn relayed the information to Officer Habel. Officer Habel was assigned to do a "knock-and-talk" at the 1807 North Burdick address. Thus, it is entirely plausible that, as Officer Habel testified, he was not aware of the discrepancy when he signed the affidavit. *See Elkins*, 300 F.3d at 649 ("Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion.")(citing *United States v. Searcy*, 181 F.3d 975, 980 (8th Cir. 1999)).

9

Furthermore, the affidavit reported that the police also corroborated not-so-innocent facts. The anonymous caller reported that Yarbrough possessed three pounds of marijuana. Outside the residence, Officer Habel found marijuana in the Land Rover. When Officer Habel approached the residence, he smelled a strong odor of burnt or burning marijuana emanating from the house. As we noted in *Elkins*, an officer's detection of the smell of marijuana in a home may by itself establish probable cause. *Id.* at 659 (citations omitted). When the smell of marijuana is coupled with an anonymous tip of drug activity, probable cause exists for a search warrant. *Id.* at 659-60.

### 2. Marijuana Residue

Yarbrough's next argument centers on the amount of marijuana discovered by Officer Habel. Yarbrough concedes the presence of marijuana in the car, yet maintains the small amount indicates personal use. Even if we accept this premise, the presence of any marijuana in a vehicle outside of a residence where police have received an anonymous tip of drug activity contributes to a finding of probable cause. *See Elkins*, 300 F.3d at 659-60 (anonymous tip plus smell of marijuana provided probable cause for search warrant); *United States v. Smith*, 783 F.2d 648, 651-52 (6th Cir. 1986)(tip from confidential informant plus marijuana plant growing outside of house provided probable cause).

### 3. Marijuana Odor

Yarbrough's final argument focuses on the odor of marijuana outside the home. Yarbrough argues that Officer Habel's claim that he smelled marijuana is deficient in several respects. First, Yarbrough puts great stock in Officer Habel's testimony that he cannot tell the difference between burnt and burning marijuana. We fail to understand the relevance of this

distinction. Marijuana, whether burnt or burning, is illegal and contributes to a finding of probable cause. Second, Yarbrough points out that no other officers testified to the smell of marijuana outside the residence. While this is true, it is of no consequence. Two other officers were with Officer Habel when he smelled the marijuana. Officer Moore never testified that he did *not* smell marijuana outside the residence; he simply never was asked. The other officer on the scene did not testify at all. Thus, contrary to Yarbrough's assertions, Officer Habel's testimony about the odor of marijuana was not contradicted by his fellow officers. And as we discussed in *Elkins*, the odor of marijuana at a residence contributes to a finding of probable cause. 300 F.3d at 659-60.

Considering the totality of the circumstances, including the corroboration of the tip, the presence of marijuana in the vehicle, and the odor of marijuana outside the residence, we find that the magistrate judge had a substantial basis to conclude that probable cause existed to issue a search warrant. Accordingly, the district court's decision is AFFIRMED.

### B.    Franks Hearing

Yarbrough's second claim on appeal is that he is entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine the sufficiency of Officer Habel's affidavit. The government contends that Yarbrough did not raise the issue below and thereby waived his right to a *Franks* hearing. Yarbrough, on the other hand, claims that he challenged the affidavit's accuracy in his motion to suppress and thereby alerted the court to the issue. We need not resolve this dispute, however, for even if Yarbrough had properly preserved the issue, he is not entitled to a *Franks* hearing on the merits.

11

Under *Franks*, a defendant is entitled to an evidentiary hearing on the sufficiency of an affidavit if he can satisfy a two part test: 1) he must make a substantial preliminary showing that the affidavit contained false statements that were made "knowingly and intentionally, or with reckless disregard for the truth," and 2) the challenged statements must be necessary to a finding of probable cause (i.e., exclusion of the allegedly false statements would render the affidavit insufficient to support probable cause). *See Franks*, 438 U.S. at 155-56. If the defendant fails to make the necessary "substantial preliminary showing," the presumption of validity with respect to the challenged affidavit is not overcome and a *Franks* hearing is not warranted. *Id.* at 171.

Yarbrough claims that Officer Habel's affidavit contains numerous false statements. First, Yarbrough finds a "dramatic falsehood" in the affidavit's report that Yarbrough was "running away from officers at the time of his arrest." Yarbrough mischaracterizes the affidavit, which states that he "attempted to flee from officers and was *subsequently* arrested on a valid search warrant." (emphasis added). Although the record does not support the connotation of the word "flee," we conclude that the statement is not materially false. Furthermore, the affidavit's use of the word "flee" refers to Yarbrough's actions *before* the arrest, not *during* the arrest. Accordingly, the affidavit is not false in this respect and does not contradict Officer Moore's testimony that he arrested Yarbrough without incident.

Yarbrough also takes issue with the affidavit's reference to a "quantity of marijuana" found in the car, which Yarbrough characterizes as a "troubling falsehood." Yarbrough contends that "residue" is the correct way to reference the amount of marijuana at issue. In the affidavit, Officer Holmes referred to the marijuana both as a quantity and as residue. Initially, we note that the term used to describe the marijuana is insignificant, as any amount of marijuana is illegal and

12

corroborates the anonymous tip that Yarbrough and Hampton had marijuana in their house. Next, the term "quantity" refers to "an indefinite amount or number." *Merriam-Webster's Collegiate Dictionary* 955 (10th ed. 1999). When Officer Habel drafted the affidavit, he was unaware of the exact amount of marijuana from the car, and "quantity" was an accurate description of what he found. Finally, Officer Habel did not refer to a large or substantial quantity, but merely a quantity. Thus, we reject Yarbrough's claim that Officer Habel's use of "quantity" was "a transparent attempt to bolster the anonymous caller's claim that three pounds of marijuana were involved." Instead, we find that Officer Habel accurately reported what he observed: a small but indefinite amount of marijuana.

Yarbrough also challenges the affidavit's reference to his outstanding arrest warrant because the affidavit did not mention the basis for the warrant. The affidavit, however, made no suggestion that the warrant was related in any way to drug charges. Accordingly, the reference was not false. Yarbrough also objects to the affidavit's statement that the anonymous tipster provided the 1807 address, when the tipster actually provided the 1806 address. As we discussed *supra*, the district court did not clearly err when it concluded that this mistake was the result of miscommunication and was not included intentionally.

Finally, Yarbrough challenges the affidavit's reference to the anonymous call as "an intelligence report." In *United States v. Baxter*, 889 F.2d 731, 734 (6th Cir. 1989), this Court held that an affidavit's reference to an anonymous caller as a confidential informant constituted "a knowing misstatement about the nature of the informant." The discrepancy in the instant case is even more troubling, as an "intelligence report" connotes a greater degree of reliability than does

13

a confidential informant. Accordingly, Officer Habel's affidavit contained a false statement that was knowingly made.

We conclude, however, that the affidavit, if stripped of the "intelligence report" reference, would still be sufficient to support probable cause. Minus the "intelligence report," the affidavit would contain the following: the information from the informant, virtually all of which had been corroborated; Yarbrough's outstanding arrest warrant; the smell of marijuana at the residence; and the presence of marijuana in the car. This information is more than sufficient to establish the requisite probable cause to justify a search warrant. Accordingly, Yarbrough cannot make the required showing for a *Franks* hearing.

## V. Conclusion

For the above-stated reasons, Yarbrough is not entitled to a *Franks* hearing, and we AFFIRM the decision of the district court.