File Name: 08a0208n.06

Filed: April 22, 2008

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**NO. 06-2337**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **APPEAL FROM THE DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| **v.** | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **SHAWN SLAUGHTER,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

**BEFORE: DAUGHTREY and SUTTON, Circuit Judges; and POLSTER, District Judge.[1]**

**Dan Aaron Polster, District Judge.** After entering a conditional guilty plea to the charge of possession of a firearm during a drug-trafficking crime, Shawn Slaughter timely appealed the district court's denial of his motions to suppress and his motion to dismiss the indictment based on selective prosecution. For the following reasons, we affirm.

**I.**

On August 25, 2002, officers from the City of Detroit Police Department executed a search warrant on the residence of Shawn Slaughter ("19675 Buffalo Street"). As a result of the search,

---

[1]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

officers recovered a firearm and a bag containing narcotics. After initially being charged in state court, Slaughter's case was referred for federal prosecution under the Project Safe Neighborhoods program. On October 24, 2003, a federal grand jury charged Slaughter with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm during a drug crime in violation of 18 U.S.C. § 924(c). Over the course of his prosecution, Slaughter filed three motions relevant to this appeal.

First, Slaughter moved to suppress the evidence seized during the execution of the search warrant because, among other things, the affidavit supporting the search warrant lacked probable cause.[2] In the affidavit, Officer Lynn Moore swore to the following facts supporting the issuance of the warrant:

> 1.) The Affiant is a sworn member of the Detroit Police Department, currently assigned to the Narcotics Division working in conjunction with a credible and reliable SOI #2073 regarding the sale of illegal narcotics from [19675 Buffalo Street]. Information from SOI #2073 has led to the seizure of narcotics, narcotics proceeds, narcotics paraphernalia and firearms. SOI #2073 has been used by the Affiant and other members of the Detroit Police Narcotics Division on over 3 occasions resulting in over 5 arrest[s] for Violation of Controlled Substance Act and other offenses, and over 2 conviction's [sic] in 3rd Circuit Court and 36th District Courts, with cases still pending in 36th District Court and 3rd Circuit Court.
>
> 2.) On 08/24/02, Affiant met with SOI #2073 to formulate a plan to attempt to make a controlled purchase of Narcotics from the above-described location. The SOI was searched for money and drugs with none being found and issued a sum of Secret Service Funds with which to attempt to make the purchase. The Affiant then observed the SOI enter the target location, stay a short time, and then return directly to the Affiant. The SOI turned over a quantity of suspected cocaine, which the SOI stated (s)he purchased at the above-described location and from the above-described

---

[2]He also moved to suppress the evidence on the basis that the officers failed to knock and announce their presence before entering the home. The district court held an evidentiary hearing and denied the motion regarding this claim, a ruling that Slaughter does not raise on appeal.

sellers with the issued Secret Service Funds provided. The SOI was again searched for money and drugs with none being found.

3.) The suspected cocaine was then conveyed to the Narcotics Section where a preliminary analysis was performed by P.O. Gerald Parker, where the test indicated positive for the presence of cocaine. The cocaine was then placed into LSF #508923.

4.) Affiant has been in numerous narcotic raids in the City of Detroit. In the overwhelming majority of these raids, firearms and/or weapons were found used to protect illegal narcotic activity and seek to remove the same.

5.) Therefore, Affiant has probable cause to believe that the above listed items will be found on the premises of the above-described location.

JA 75. After briefing and oral argument, the district court denied the motion. The district court concluded that the affidavit contained probable cause to search the residence because the affiant worked with a credible and reliable source of information ("source" or "SOI"), there had been a recent drug sale at the targeted residence, the affiant corroborated the controlled purchase, and it was logical to assume that if the resident sold drugs from his house, there would be more drugs at that location.

Just prior to trial, Slaughter asked for new counsel on the ground that his attorney was not prepared. Although the court granted the request, it found that Slaughter was responsible for obstructing his attorney's trial preparation efforts by deliberately refusing to consult with him. Based on this misconduct, the district court ordered that Slaughter be detained pending trial. Slaughter asked the court for permission to take his children home before being detained. The court granted the request, but ordered him to report to the U.S. Marshal's Service later that day. Slaughter never returned, beginning an 18-month odyssey from justice.

After Slaughter was apprehended, he filed a second motion to suppress. This time, he argued that the affidavit supporting the search warrant contained false statements because the SOI never

3

came to his house on the date of the alleged controlled purchase. In support of this contention, Slaughter offered the affidavits of his longtime girlfriend (Domonique Williams), his cousin (LaRon Jordan) and himself – all claiming that Slaughter held a barbecue at his residence that day and they never saw anyone come to the house to purchase drugs. Slaughter sought a *Franks* hearing on the motion, and an *in camera* hearing on the existence of SOI #2073 and the source's working relationship with the Detroit Police Department.

The court held a *Franks* hearing, during which Officer Moore testified that he was ordered by Sergeant Fred Watkins to investigate the Buffalo street residence for drug-trafficking activity based on a complaint filed by a concerned citizen. Officer Moore contacted a SOI with whom he had previously worked, picked him up, searched him thoroughly for money or contraband and found none, drove him to the residence, gave him $20 to attempt a controlled buy, and observed him enter and exit the house after which he turned over a bag containing suspected cocaine. Officer Moore gave the SOI $40 for his services and submitted the suspected cocaine for field testing. Once the substance tested positive for cocaine, Moore prepared the affidavit in support of a warrant to search the residence. In addition to Officer Moore's testimony, the Government provided documents recording the funds given to the SOI both before and after the controlled purchase, the interoffice memorandum from Sergeant Watkins to Officer Moore detailing the complaint made about the Buffalo Street address, and the cocaine purchased by the SOI on August 24, 2002.

Slaughter's witnesses both testified that, on August 24, 2002, Slaughter hosted a barbecue for some family and friends. Domonique Williams, who at that time had a one-month old baby fathered by Slaughter, testified that they were celebrating her last day of maternity leave before returning to work. She testified that she spent the better part of the barbecue in the driveway in front

4

of the garage (from where she would be able to see someone entering the side door) but the baby was inside the house and she was in and out of the house for brief periods, as was Slaughter. She testified that she did not remember seeing any strangers at the house that day. On cross examination, Williams admitted that, although she knew Slaughter was a fugitive from justice and the U.S. Marshal was looking for him, she did not inform the Marshal that she had contact with Slaughter several times during his 18-month flight. In fact, when Slaughter was stopped by police while still a fugitive and identified himself as LaRon Jordan, she confirmed this false identification.

LaRon Jordan testified that he was at the barbecue from noon to 9 p.m., although he left the party briefly to go to the store and to visit one of Slaughter's neighbors. He testified that he did not recall seeing any strangers at the house that day, nor did he observe illegal narcotics being used, sold or displayed.

In addition to witness testimony, Slaughter's attorney produced numerous documents given to him by previous counsel which, previous counsel claimed, were left behind in Slaughter's house by the officers executing the search. The documents were standardized forfeiture notices, laboratory requisitions and payment receipts – many of which were blank and some of which contained information from a search conducted three weeks earlier. Slaughter's attorney argued that the documents showed that Detroit police officers manufactured informants and controlled buys on the fly when executing unlawful searches. When asked about these documents, Officer Moore testified that he had not seen them before and did not know where they came from.

At the conclusion of the hearing, the district court ordered the Government to produce SOI # 2073 for an *in camera* hearing. After some investigation, the Government filed a brief informing the court that it was unable to produce the source because records from the Detroit Police

Department showed that he had been deactivated on July 27, 2004. The Government explained that it was the Department's practice to deactivate those sources who had been dormant for six months. Upon deactivation, the source had no obligation to report or update his contact information with the police department, and was free to leave the city or state. The Government was also unable to locate the source despite searching for his last known address under three separate law enforcement databases and contacting the source's brother who had no idea of his whereabouts. The Government explained that the source had worked for the Police Department up to January 2004 (i.e., a year and a half after Slaughter was arrested and six months after Slaughter absconded), and noted that, had Slaughter honored the court's detention order and made a timely request to produce the source, he could have been brought before the court.

Notwithstanding this turn of events, the court denied the second suppression motion. The court credited the testimony of Officer Moore that the controlled buy did in fact occur on August 24, 2002, and found that the testimony of the defense witnesses (specifically, that they were not beside Slaughter throughout the day) was not inconsistent with that of Officer Moore. Because the evidence sustained the veracity of the facts providing probable cause for the search warrant, the court denied the motion.

Finally, Slaughter filed a motion to dismiss the indictment for selective prosecution, arguing that a disproportionate number of African Americans in Wayne County, Michigan, were prosecuted under the federal Project Safe Neighborhoods program at what seemed to be the sole discretion of the state prosecutor. This motion was denied after a series of hearings.

Following the denial of Slaughter's three motions, he entered a written plea agreement with the Government wherein he pled guilty to possession of a firearm during a drug-trafficking crime.

Although Slaughter expressly waived the right to appeal his conviction in the written plea agreement,

he reserved the right to appeal the denial of his suppression motions in the following colloquy:

> THE COURT: Okay. Also, if the Court sentences you with that amount, then on page five, number seven, then you waive your right to appeal. Do you understand that?
>
> THE DEFENDANT: Your Honor, I believe there's a condition where I could appeal the search and seizure motion.
>
> THE COURT: Okay. So this then would be under the provision –
>
> MR. MULCAHY: Yes, Your Honor.
>
> THE COURT: – of – that is contained in the Rule 11? If not, we'll just put it on the record.
>
> MR. MULCAHY: It's not, Your Honor. I apologize for that.
>
> THE COURT: We'll just put it on the record. I note there have been conversations relating to it. So we'll go to Rule 11 and we'll pick the provision that specifically applies to it, and that will be Rule 11(a)(2). It's entitled "Conditional Plea." It says with consent of the Court and the government, a Defendant may enter a conditional plea of guilty reserving in writing, which we'll put on the record, the right to have an appellate court review an adverse determination of a specified pretrial motion, and that would be your motion to suppress; is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Then that will be a condition of the plea, that you will be entitled to appeal this motion to suppress.

JA 386-87. Slaughter was thereafter sentenced to 60 months in custody along with three years of

supervised release.

Slaughter filed a timely notice of appeal, raising issues arising from the district court's

rulings denying both his suppression motions and his motion to dismiss the indictment for selective

7

prosecution. As shown in the plea colloquy above, however, Slaughter did not reserve the right to appeal his selective prosecution motion; thus, he is precluded from raising it now on appeal. *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (holding that appellants waived all issues "not expressly reserved for appeal" in their conditional guilty pleas); *United States v. Finnigin*, 113 F.3d 1182, 1183 (10th Cir. 1997) (holding that issues not reserved as part of a conditional plea are waived); *cf. United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003) (holding that a defendant may not appeal an adverse ruling on a motion to suppress unless he has preserved the right to do so by entering a conditional guilty plea). And although Rule 11(a)(2) requires that issues reserved for appeal must be stated in writing, the Government has consented to Slaughter's oral reservation of the right to appeal his suppression motions and does not argue that he waived this right by failing to comply with the writing requirement.

## II.

When evaluating a district court's ruling on a motion to suppress, the panel reviews the court's factual findings for clear error and its legal conclusions *de novo*. *See United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The evidence must be viewed in the light most favorable to the government. *United States v. Buchanon*, 72 F.3d 1217, 1223 (6th Cir. 1995).

## A.

Slaughter argues that the affidavit supporting the search warrant lacked probable cause. The Fourth Amendment to the United States Constitution prohibits the issuance of a search warrant "but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband

8

or evidence of a crime will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  A magistrate judge's determination of probable cause is afforded great deference, and should not be set aside unless it was arbitrarily exercised. *U.S. v. Yarbrough*, No. 06-2233, 2007 WL 4553687, at *3 (6th Cir. Dec. 20, 2007) (*per curiam*) (*citing United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (*en banc*)).  Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United State v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

Here, Slaughter does not challenge the reliability of the informant as it is recited in the warrant.  Rather, citing *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), he argues that the affidavit lacks probable cause because it contains no assertion that SOI # 2073 observed narcotics in the home or that officers observed narcotics traffic in and around the house.  *Weaver* is distinguishable.  The affidavit in *Weaver* was based on a "tip" by an informant about an uncontrolled purchase of narcotics alleged to be taking place at a certain location.  Here, the affidavit was not based on an informant's tip,  but on the controlled purchase of cocaine at a residence by a reliable source with whom the affiant had previously worked, which purchase was independently corroborated by the affiant.  Similar affidavits have previously been upheld by this court. *See, e.g., United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (holding that a warrant affidavit established probable cause where it described the controlled purchase of drugs by a reliable informant and observed by police officers, which purchase took place within 72 hours of the application for the search warrant).

Slaughter also contends that the sale of small user quantities of narcotics from a residence

9

does not provide an inference of storage at the residence. Where, as here, a complete stranger goes to a residence to purchase cocaine and actually gets it, no matter the quantity, it is reasonable to infer that more drugs may be stored there.

## B.

Slaughter's *Franks* claim also fails. A defendant may challenge the lawfulness of an executed search warrant on the basis that a false statement, made intentionally or recklessly, was included in the warrant affidavit and was necessary to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The district court's factual findings are examined for clear error. *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999).

The controlled purchase of cocaine by SOI # 2073 at Slaughter's residence on August 24, 2002 provides the basis for the warrant affidavit. We find that the district court did not commit clear error when it concluded that the controlled purchase of cocaine at Slaughter's residence did in fact occur on that date. There is no evidence in the record undermining the court's decision to credit Officer Moore's testimony. Slaughter's cousin left the home for significant periods of time during which the controlled buy could have taken place, Slaughter's girlfriend was in and out of the house all day checking on the baby and the evidence shows that Slaughter's girlfriend had lied for him on previous occasions.

Slaughter argues that the documents left at Slaughter's residence after the search suggests that the Detroit Police Department manufactures informants as well as controlled drug purchases, and that the inability of the Government to locate the SOI or to provide concrete information regarding his whereabouts suggests there was no controlled buy. We disagree. The Sixth Circuit has held that, although the Due Process Clause requires the Government to disclose the identity of

10

an informant at trial under certain circumstances, "it has never been held to require the disclosure of an informant's identity at a suppression hearing." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); *see also United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990) (holding that "due process does not require the disclosure of an informant's identity at a suppression hearing"). Moreover, the evidence shows that Slaughter's decision to jump bond seriously undermined the Government's ability to produce the source. With respect to the form documents left behind by one of the officers, no witness testified as to where, how, or when these documents were found. Furthermore, Officer Moore provided a plausible explanation for why the documents may have been inadvertently left in the home. He testified that, on occasion, officers will bring into the searched premises the standardized forms so that they can sit down and fill out the paperwork and the evidence tags on the spot. Slaughter's speculation that the documents show that Detroit police officers manufacture informants and controlled buys on the fly when they are executing unlawful searches, without any basis in evidence or fact, is insufficient to show that the controlled purchase did not occur on August 24, 2002. Because Slaughter cannot show a *Franks* violation, this claim also fails.

Accordingly, because there is no basis upon which to reverse the lower court's rulings denying Slaughter's suppression motions, we AFFIRM.

11